ANN G. BLACKINGTON *vs.* MAYNARD SUMNER & others, administrators.

Knox.   Opinion February 3, 1879.

*Instructions.  Presumption.  Jury.  Line.  Possession.  Evidence.*

The force and effect of the testimony of a witness, and how far his testimony on direct examination is modified by his cross examination, are questions for the jury to determine.

Thus, where, in trespass *quare clausum,* a line was in dispute, and one party claimed that a certain wall was on the true line, and a witness testified on direct examination that he was present when it was taken away; that he thought a stake was driven down at the corner between the lots, and that his father drove it; and, on cross examination, he testified that he did not know that he saw the stake driven, or that he had seen it since a boy, or had ever seen it; *Held,* the refusal of the presiding justice to instruct the jury that the witness' whole testimony should be disregarded, affords no ground for exception.

And where the wall, as originally built, differed, as the plan showed, but slightly from the line as claimed by the defendants, and was the line on which the plaintiff built as the true line; it is no ground of exception, upon the part of the defendants, for the presiding justice to call the attention of the jury to the wall and stake, state the positions of the respective parties thereto, together with the testimony bearing thereon, and then submit the whole question to the jury as to the evidential force and effect of the wall and stake upon the true line between the parties' land.

If the wall was in existence when the deed was given, and the deed does not call for it, there is no presumption of law that the wall was or was not, intended for a line; any inference from the fact is for the jury.

In ascertaining where the line was originally run, the instruction that the jury must be governed by the calls in the deed from whom the title is derived as primary evidence, but that the jury are to consider also the other evidence in the case bearing on the result, affords no ground of exception. Where only the kind of possession that constitutes a disseizin is requested, a correct instruction in that regard, and omitting all mention of the length of time necessary for such possession to continue, affords no ground of exception.

ON EXCEPTIONS, AND MOTION to set aside the verdict, and for new trial.

TRESPASS, *quare clausum*, for removing a small piece of fence belonging to plaintiff.

Plea, general issue, with brief statement of soil and freehold, and that the fence was wrongfully erected by the plaintiff upon the land of defendants' intestate, and lawfully removed. The real question was the true line between adjoining lots of the parties. The facts are sufficiently stated in the opinion. The defendant requested the following instruction, among others:

" Even if George W. McKenney did testify, on direct examination, that the stake was driven in the ground when the wall was removed, but, on cross examination, testified that he did not see it put there, and did not see it afterwards, and had never seen it, his whole testimony about the stake must be disregarded."

This instruction was not given except as appears in the opinion, which recites other exceptions alleged by defendants.

*L. M. Staples*, for the plaintiff.

*A. P. Gould & J. E. Moore*, for the defendants, in a very elaborate argument, among other things, contended that the wall, which the plaintiff set up as the true line, had no significance, and furnished no legal evidence touching the case. It had been put upon the ground when the land upon both sides of it was owned by one party, and for no purpose disclosed by the evidence in the case; that, when the first deed was given, creating the dividing line in dispute, one monument, now agreed by both parties to be correct, was named in the deed, and then the line, by compass and actual survey, was projected across the tract therein divided, and no wall nor any other monument was mentioned, and

the deed called for this line, which could be ascertained with mathematical certainty; that there is no dispute about this line being the true line, if it could be found. Why was not the wall named in the deed, if intended to be the boundary? There is not only no evidence that the compass line, named in the deed, was to conform to the wall, nor is there any evidence that the defendant, or any of his grantors, ever recognized the wall or the stake as a monument. There was not one word of legal evidence how the stake came there. McKenney is the only witness and his testimony utterly fails.

The evidence relating to the stone wall was competent only as bearing upon the propositions of the plaintiff that she and her grantors had acquired a title by adverse claim up to the wall, and if the evidence failed to show this, then the wall was out of the case and the jury should not have been allowed to consider it. *Worthing* v. *Worthing*, 64 Maine, 335.

The only question was, where is the line called for in the deed? There was no claim of latent ambiguity, and nothing requiring extrinsic evidence, to locate the land described, and the plain language of the deed must control. *Allen* v. *Kingsbury*, 16 Pick. 235. *Jenks* v. *Morgan*, 6 Gray, 448. *Bond* v. *Fay*, 12 Allen, 86. 2 Wash. Real Prop. 674 [631.]

There was no evidence that the owners of the adjoining lots had concurred in considering the wall the dividing line, or had ever acted upon such understanding; but if they had, their conduct, or admissions, could not vary the calls in the deed, or enlarge or diminish the grant, and where there are no monuments referred to in the deed, the courses are to govern. *Robinson* v. *Miller*, 37 Maine, 312. *Linscott* v. *Fernald*, 5 Maine, 496. *Wiswell* v. *Marston*, 54 Maine, 270. *Henshaw* v. *Mullins*, 121 Mass. 143.

The plaintiff's land is bounded upon that of the defendants, and the deed giving the dividing line is to govern. Defendants' parcel is a monument, which determines the boundary and limit of plaintiff's land, and true line of ownership. 2 Wash. Real Prop. 675 [632]. *Sparhawk* v. *Bagg*, 16 Gray, 583. *White* v. *Jones*, 67 Maine, 20. *Cleaveland* v. *Flagg*, 4 Cush. 76.

The evidence as to the stake was admitted, under objection, not to show where the wall originally stood, but as evidence of the line between the lots. This was wrong. " It (stake) was driven down at the end where the line was, I suppose," says witness.

The request in regard to McKenney's testimony should have been granted. The only way of doing justice to a party against whom fraudulent evidence has been given, under pretense that the witness has knowledge, when he has none, is to strike out his evidence when it discloses the fact that he has no knowledge, and that his testimony was hearsay merely. The jury were left to base their verdict on hearsay evidence, and this in regard to a stake which neither the defendant nor any of his grantors ever recognized as a monument, or ever heard of before the trial.

The other instructions complained of were erroneous. There was no evidence in the whole case to warrant the judge in instructing the jury to give such force to the location of the wall. No evidence that the wall or stake was either of them ever recognized as monuments, or intended to mark the boundary line, by either word or acts of defendants, or any of his grantors, nor is either of them anywhere mentioned in any deed of either defendants' or plaintiff's lot, down even to the latest grant.

The jury were substantially required to find the location of the wall and stake, and instructed that it was competent for them to find that there was the true boundary between the plaintiff's and defendants' lot, notwithstanding these pretended monuments were inconsistent with the deed, and act of parties and all their grantors.

The damages given by the jury were excessive. The jury either acted upon wrong premises, or were governed by gross partiality, passion or predjudice.

APPLETON, C. J. This is an action of trespass, *quare clausum fregit*, for cutting down a fence built by the plaintiff on land in her possession and to which she claims title.

The defendants justify as owners of the premises upon which the fence was erected.

Both parties derive title from the same source, but the defendants' is the elder. The only monument recognized by the parties

is at a point marked red B on the plan. Beginning at this point and following the courses and distances given in the deeds, and assuming a proper allowance for the change in the variation of the needle to have been made, and that the running in 1846 (which is the date of the deed under which the defendants derive title), was with the same accuracy and skill as that by the surveyor appointed by the court in this case, the land in controversy belonged to Wm. A. Farnsworth, whose title the defendants represent.

The plaintiff offered evidence tending to show that there was a stone wall in 1847 between her and the defendants' lots when the deed under which she derives title was given ; that, when the house now occupied by her was built (about twenty-seven years ago), a portion of the wall was taken for the cellar of the house ; that, after the removal of that portion, a stake was driven down at its termination on the street ; that the house then erected was built parallel with the wall or line claimed by the plaintiff, and not with that claimed by the defendants ; that the place where the wall had been could still be seen by a depression in the land ; that the wall was in fact the dividing line between the plaintiff's and defendants' lots, and that the fence which the defendants' testator removed was on that line.

A view was had of the premises by the jury who returned a verdict for the plaintiff.

Exceptions to the ruling of the presiding justice, and a motion for a new trial, were duly filed.

During the progress of the trial a stake was found at the end of the line on Pleasant street, as claimed by the plaintiff.

George W. McKenney, whose father built the house occupied by the plaintiff, in his direct examination, testified that he was present when the wall was taken away twenty years ago; that he thought a stake was then driven down at the corner between the lots on Pleasant street ; that his father drove it down, and that there was a large rock left beside the stake. On cross examination, he said he did not know that he saw the stake driven down, or that he had seen it since a boy, or that he had ever seen it,— saying, however, that he thought he had seen it, and that the stake was put there.

I. The counsel for the defendants requested the court to instruct the jury that, " even if George W. McKenney did testify, on direct examination, that the stake was driven in the ground when the wall was removed, but, on cross examination, testified that he did not see it put there, and did not see it afterwards and had never seen it, his whole testimony should be disregarded."

This requested instruction was properly refused. The force and effect of McKenney's testimony was for the jury. They had seen and heard him. They had observed his manner and appearance. It was for them to determine what his whole testimony was, how far this evidence on his direct examination had been modified or changed by his cross-examination, and what reliance could be placed upon it. It was not for the court peremptorily to instruct the jury to disregard it. It would be an assumption of their province to have done so.

II. It was not questioned that there had, some thirty or more years ago, been a wall between the plaintiff's and the defendants' lot. This wall as originally built differed, as the plan shows, but slightly from the line as claimed by the defendants, and was the line on which the plaintiff built her fence as the true line.

In reference to this, the following instruction, to which exceptions are taken, was given :

" Now the first question is, was there a wall there ? With regard to this you have certain evidence,—evidence that there was a wall (one of the witnesses says thirty-two years ago—thirty, thirty-one or thirty-two years ago); that the wall was there before the house (plaintiff's) was erected. Then they find a stake. It is for you to say how long that stake was there and for what purpose it was put there. The plaintiff's position is, that that stone wall from red B (on the plan) to that stake was originally the line of these lots located by the parties themselves. The wall, if there, was there for some purpose; the monument, if honestly there, was there for some purpose. Did the wall originally exist ? They say there is a depression in the ground. You have seen it and know how it is. The plaintiff says this wall was the dividing line between these parties ; that it was built for that purpose, and that it run to that stake, and that this was the line twenty-seven

years ago—thirty-one years ago—and the buildings were built parallel to that line, and hence she asks you to infer that the parties agreed upon the wall as a line and put down monuments, and therefore she has a right to claim to it. On the other hand, the defendants deny that there were any monuments there, and deny the wall, and the plaintiff asserts its existence. What was the wall between these lots for? Was it for a line between these parties? Or for what purpose? Did they at the time place monuments there? There are none referred to in the deed. The wall, so far as its existence is established, is a fact evidential to determine where the true line is. Now, gentlemen, take the evidence. You have heard the various testimony. It is for you to say where this lot was originally run out, and whether the wall was built upon the line and a monument put at the end of it. If you find where the line was originally laid out, that is the true line between the parties, though there may have been a variation of three degrees. The only important fact is to determine where is the true line, as laid out, between these lots."

These instructions left the whole question as to the wall to the jury,—whether it was on the line between the parties or not, as one side asserted and the other denied. If the wall was there before the plaintiff's or the defendants' lot was run out, its existence would render it improbable that any other line was adopted; or such a line as the defendants'. With a wall between two lots, it would be little likely that the owner on selling would create a new line, leaving the wall partly on one lot and partly on the other. But however that may be, the whole was submitted to the jury, and no erroneous legal position is perceived in this portion of the charge.

III. Another portion of the charge to which exception is taken is as follows: "The only question is, what was the original line of the plaintiff's lot, or, rather, of the defendants', for the plaintiff's is bounded by the defendants' lot. And, to determine what the original line was, you are to look at all the evidence in the case; the wall, so far as it has any bearing, the monument, if you find it, so far as it has any bearing. The force of the whole it is for you to determine. One witness, I believe, testified originally

that a stake was driven in the ground when the wall was removed, and, on his cross-examination, that he never saw the stake. So far as his testimony goes, so far as the testimony of the other witnesses go, you are to take their whole testimony as originally given, and as affected, more or less, by cross examination, as to the facts in the case."

It was for the jury to weigh the whole evidence, and the whole was left to their sound judgment. No error is perceived in the instruction given.

IV. The counsel for the defendants requested the court to instruct the jury " that, in ascertaining where the line was originally run, they must be governed by the calls in the deed to Keizer," from whom they derive their title.

This proposition was affirmed, the court adding that the calls in the deed were primary evidence, but that the jury were to consider the other evidence as bearing on the result, and give their verdict accordingly.

The general proposition of the defendants' counsel was sustained, but there was other evidence, and the jury were directed to consider that, so far as it bore on the case ; and properly so directed.

V. The jury were instructed that the stake claimed by the plaintiff as a monument could not affect the defendants' title unless assented to by Farnsworth or his grantors.

VI. The counsel requested the charge in respect to what constituted disseizin.

In answer to this request the court declined to say anything one way or the other as to the facts of possession. But charged the jury that to constitute a title by disseizin, there must be open, notorious and exclusive and adverse possession.

Whether there was adverse possession was for the jury and not for the court, and it was not for the court to say whether there had been adverse possession or not.

That open, notorious, exclusive and adverse possession will constitute a disseizin is well settled. *Winthrop* v. *Benson*, 31 Maine, 381. *Chadbourne* v. *Swan*, 40 Maine, 260. The request of counsel did not relate to the length of time necessary for the

acquisition of title by adverse possession, it referred only to the kind of possession required to constitute it adverse.

VII. The court was requested to instruct the jury that, if the wall was there when the deed was given, and the deed does not call for it, there is no presumption that it was intended for a line bound. This the court declined to do, and left the effect of the wall to the jury.

There is no presumption of law one way or the other on this subject. Any inference from the fact assumed in the request was for the jury, to whose consideration it was properly submitted.

VIII. A motion has been filed for a new trial. The facts were for the jury. They did not think that, if there was a stone wall between the two lots in controversy, that a grantor would be likely to run a new line between them, varying slightly from the existing boundary, having part of the wall on one lot and part on the other ; or that a grantor, building within a year or two from the date of his deed, and when the true line could not but be known, would be likely to build a house otherwise than parallel with the lines of the lot. The jury saw the premises, and the stake, and the place where on the face of the earth it was found. They saw and heard the witnesses, and were the appointed judges of what they said and of the reliance to be placed on their testimony.

The value of the property in dispute is trivial. The damages given were excessive, considering what was done and that it was in assertion of a supposed legal right.

> *Exceptions overruled. New trial granted, unless the plaintiff will remit all but ten dollars ; in which case the motion is overruled.*

DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.