INHABITANTS OF NORRIDGEWOCK *vs.* CEPHAS R. WALKER.

Somerset.   Opinion May 18, 1880.

*Assessment of taxes.   Duty of assessors.   Evidence of assessment.*

It is the duty of assessors to make and subscribe certificates of their assessments upon the lists in the form prescribed by law and to make a record of their assessments, and of the invoice and valuation from which they are made, and to lodge the same or a copy thereof in the assessors' office, if any in the town, and otherwise with the town clerk there to remain, before they issue their warrant of commitment.   But their failure to do this will not invalidate the assessment, provided the town is able to prove an assessment regularly made under the hands of the assessors by other legal evidence.

For this purpose a list of the assessments annexed to and incorporated with a commitment to the collector, signed by the assessors, is competent evidence.

ON REPORT.

Debt for a tax assessed against the defendant by the assessors of Norridgewock, in the year 1874.   At the trial, a book, claimed by the plaintiffs to be the record of assessments, invoice and valuation of the town of Norridgewock was offered by them.   It did not bear the signatures of the assessors, and there was nothing on the book to show by whom it was made.   It was admitted subject to the defendant's objection.   The plaintiffs afterwards moved to amend the record in such book, by having two of the assessors, present in court, sign the same, which they were ready to do.   The case was then withdrawn from the jury and reported to the full court.   If the court should be of the opinion that signing of such book is necessary, and that the same is in that respect amendable, at that stage in the proceedings it was to be treated as signed, and if upon so much of the testimony as was legally admissible, a jury would be warranted in finding a verdict for the plaintiffs, judgment was to be for the plaintiffs, otherwise for the defendant.

*John H. Webster*, for the plaintiffs.

*Walton & Walton*, for the defendant.

The defendant was not taxable in Norridgewock in the year 1874; he was personally present in Cornville, April 1, 1874. His trunk only was in Norridgewock.   *Warren* v. *Thomaston*,

43 Maine, 418; *Church* v. *Rowell*, 49 Maine, 370; *Carnoe* v. *Freetown*, 9 Gray, 357; *Littlefield* v. *Brooks*, 50 Maine, 477.

There is no evidence of any legal assessment in Norridgewock. There is no record until it is signed. The signatures are not errors or omissions covered by R. S., c. 3, § 8; *Tyler* v. *Hardwick*, 6 Met. 470; *Colby* v. *Russell et al.* 3 Maine, 227; *Commonwealth* v. *Hall*, 3 Pick. 263; *Lowell* v. *Newport*, 66 Maine, 83.

BARROWS, J.    The defendant disputes the right of the plaintiffs to recover against him, in this action, the amount of his taxes for the year 1874, because, he says, 1st, that he was not an inhabitant of the town, and 2d, that they do not show any legal assessment of the tax.    Notwithstanding the defendant's strenuous efforts to evade his fair share of the public burdens, we are satisfied that he was legally taxable in Norridgewock that year.

Upon the evidence, the jury would be fully justified in finding that he was living there both before and after the first of April, in the family of a relative by marriage, not as a visitor, but engaging in the ordinary employments of life; that, not many days before, the first of April, upon being informed of the intention of the assessors of another town to tax him there, because some of his effects were left there, he procured their removal to a boarding house in Norridgewock, where they remained until along in the summer; and that, subsequently, being sued by another town for a tax for that year, he made a successful resistance, claiming that his residence was in Norridgewock.

Under these circumstances, his temporary absence from Norridgewock on the first day of April, and his subsequent consent to pay a poll tax in the town where he was on that day, cannot be regarded as effecting a change of residence.

Unless he is relieved by the carelessness of the town officers, for want of evidence of a legal assessment, he must pay his tax. Section 70 of chap. 6, R. S., requires assessors to make the assessment according to existing laws; "to make perfect lists thereof under their hands;" and to commit the same to the proper officer to collect "with a warrant under their hands in the form hereinafter prescribed."    Section 94, gives the form of the warrant

which the assessors are to issue for the collection of the State tax, and the form of the certificate of assessment which they are to make ; and § 95 prescribes that the warrant for the collection of county and town taxes shall be of the same tenor, *mutatis mutandis;* and § 71 permits the assessors to combine the State, county, and town taxes in one warrant, "and their certificates accordingly."

Section 73 orders them to make a record of their assessment and of the invoice and valuation from which it is made, and before committing the taxes for collection to deposit it, or a copy of it, in the assessors' office, if any, and otherwise with the town clerk there to remain. Under directions so explicit it would seem as if "even the wayfaring man . . . need not err" as to what the law required in these respects.

One of the things to be established in this suit, is the making by the assessors, not merely of an assessment, but of a list of the assessments "under their hands." The report shows that a book which was claimed to be the record of assessments, invoice, and valuation of the town, was offered in evidence by the plaintiffs, but it did not appear to be signed by the assessors, "and their names did not appear upon it anywhere, and nothing on the book showed by whom it was made."

It seems that two of the assessors of 1874 were in court ready to sign the list of assessments, if permitted to do so against the defendant's objection. But it may well be doubted whether, if, up to that time, there had been no list of assessments under the hands of the assessors, it would be competent to supply such an omission under the power given to amend such lists in R. S., c. 3, § 8.

Before one proceeds to amend errors or supply omissions in a tax list, there must be a tax list in existence, such as the law requires, "under the hands of assessors." And that is precisely where the record proof was deficient. It is true that this record is not required to be under the hands of the assessors ; a copy will answer ; but the original must appear to have been under the hands of the assessors, and this the record fails to show.

The failure to lodge the record in the assessors' or town clerk's office before making the commitment of the warrant and list to

the collector, we think should not be regarded as fatal, under the provisions of § 114, but in order to make the healing provisions of that section applicable there must first be an assessment under the hands of the assessors.

It was the plaintiffs' good fortune that they were able to produce in evidence the tax-collector's book, to which no specific objection is made; and, for aught we see, it is in the form required by law with a list of the assessments appended and referred to in the warrant which is under the hands of the assessors.

It is their further good fortune, that the court, in view of the ill consequences that would be likely to result from a rule which would require anything like technical precision in the doings of these officers, held, in *Lowe* v. *Weld*, 52 Maine, 588, that the commitment subscribed by the assessors, prefixed to and incorporated with the lists in the collector's book and specifically referring to them, was a sufficient authentication of the lists and compliance with the essential requirements of the statute in that particular. Upon the strength of this decision, and those therein referred to, we are enabled to say in the present case that it appears that the assessors did make an assessment which must be regarded as valid, and a list of assessments under their hands, and hence tax payers must pay the sums assessed against them, and are remitted to their remedy against the town under § 114, for such damages as they may have suffered by reason of any errors or omissions of the assessors.

It is obvious that towns cannot afford to let their ability to establish the validity of their assessments depend upon the preservation and production of the tattered book that goes the rounds with the collector; and that assessors who neglect to place upon the records, where it may be preserved, the certificates of assessment required by the law, fail in their plain duty to their town.

*Judgment for plaintiffs for $63,
and interest from September 7,
1875.*

APPLETON, C. J., WALTON, LIBBEY and SYMONDS, JJ., concurred.