## ST. JAMES EDUCATIONAL INSTITUTE *vs.* CITY OF SALEM.
## SAME *vs.* SAME.

Essex.   November 7, 1890. — January 17, 1891.

Present: FIELD, C. J., W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Tax — Exemption — Literary Purpose.*

Real estate, which a corporation organized for the education and religious instruction of children owns and permits to be used as purely incidental to the management of a parochial school situated on another's adjoining property, and entirely controlled and supported by others than itself, is not exempt from taxation under the Pub. Sts. c. 11, § 5, cl. 3.

TWO ACTIONS of contract, brought by a corporation organized under the Pub. Sts. c. 11, § 5, for the education and religious instruction of children, to recover the amount .of taxes paid under protest.   Trial in the Superior Court, without a jury, before *Dewey*, J., who found for the defendant in each case, and reported the cases for the determination of this court.   The facts appear in the opinion.

*D. W. Quill*, for the plaintiff.

*F. L. Evans*, for the defendant.

BY THE COURT.   The following opinion was written by Mr. Justice DEVENS, and was adopted after his death as the opinion of the court by the Justices who sat with him at the argument.

We shall not have occasion to consider whether the plaintiff is one of the corporations properly described in the Pub. Sts. c. 11, § 5, cl. 3, so that its property, according to the provisions of that clause, is exempt from taxation.   That its real estate should be thus exempt, it is necessary that it should be occupied by it, or its officers, for the literary, benevolent, charitable, or scientific purposes for which the corporation was formed.   The first action is brought to recover the amount of the tax assessed to the plaintiff for the year 1888, on lots marked 1, 2, and 3 on a plan annexed to the report, which tax was paid by the plaintiff under protest.   The second is brought to recover the amount of a tax assessed for 1887, upon the land and building. included

in lot marked 1 on the plan.    As the plaintiff filed its schedules
with the assessors in due time (St. 1882, c. 217), it is simply
a question as to whether these pieces of real estate of the plain-
tiff are legally subject to taxation.    The justice of the Superior
Court has found for the defendant.    If it shall be determined
that, upon the evidence before him, he was authorized to find
that lot No. 1 was properly subject to taxation, it will not be
necessary to inquire whether lots marked 2 and 3 were so or
not.    If exempt, the remedy for the injury done the plaintiff
by the assessment thereof would, in such a case, be by petition
for an abatement of the over assessment, and not by an action
at law.

According to the evidence, a school was maintained in the
rear portion of a church building on another lot not owned by
the plaintiff.    It had been so for some years previous to 1887.
This school was not formally organized, but occupied eight
school-rooms on the first and second floors of the rear part of
the church building.    It was under the instruction of eleven
teachers, who resided as a family in the building upon lot No. 1,
which is here in question.    This school was known as the St.
James Parish School, it was under the control of the clergymen
of that parish, and was supported by contributions of the parish-
ioners of the church.    It was conducted in this manner before
April 27, 1887, when the plaintiff received its deed, and no
change in its management or control or support was then made,
nor has any been made since.    The building on lot No. 1 was
then, and has been since, used as a home for teachers, although
three rooms have been used for recitations, etc.    The rear or
northerly portion of the church building is really the school-
room, and the school is really there; and this use of the building
on lot No. 1, whether for teachers or scholars, was incidental
thereto.    The teachers have always been paid from money con-
tributed by the parishioners of the church, although the use of
the building on lot No. 1 as a dwelling-house was considered in
such payment.    Regular sessions of the school were held in the
church building five days in the week, but some of the scholars
recited from time to time in the building on lot No. 1, and re-
ligious instruction was sometimes given there in the evening to a
few children who attended the day school, but the duties of the

teachers were "almost entirely performed in the school in said church building." From these facts, more fully stated in the report, it is seen that the plaintiff corporation permitted this lot to be used as purely incidental to the management of a school situate on church property which belonged to others, and managed, controlled, and supported by others than itself. The use made of the real estate in question was not, so far as the plaintiff is concerned, by conducting or managing a school thereon, which might properly be termed an appropriate literary and educational purpose, but by simply permitting others conducting and controlling the school to use its premises in aid and furtherance of their own object. The conduct of the corporation, so far as corporate affairs are concerned, and the history of the conveyances have a distinct bearing upon this question of an actual occupation by the plaintiff, and how such occupation should properly be characterized. The church building and the building on lot No. 1 were erected eight years before April 20, 1887, the title to both being then in Archbishop Williams. They had been always used together, the one as incidental to the other. The plaintiff corporation held a meeting for organization on April 16, 1887, previous to receiving its deed of the premises, but no vote appears to have been passed authorizing the purchase of this lot, and it would seem to have been purely a gift by deed from the Archbishop, who held the title. It was not in evidence that either the said corporation, or the president, treasurer, or directors thereof, had held any meeting or taken any action except that of April 16, 1887.

Upon all the facts the judge was justified in holding that neither the plaintiff nor its officers were in occupation of these premises for the purposes of carrying on or managing a literary, benevolent, charitable, or scientific institution. It is not enough that they tacitly permitted another corporation to use their property. The corporation must itself, or by its officers, occupy it for the purposes for which they have been incorporated, if it is to be exempt from taxation. They cannot turn over to another corporation its use and management for the benefit of such other corporation, however laudable the objects of that may be. *Chapel of the Good Shepherd* v. *Boston*, 120 Mass. 212. As it was properly found that these premises were not occupied by the corpora-

tion or by its officers for the purpose for which it was insti-
tuted, the plaintiff's property, in part at least, was not exempt
from taxation; and these actions cannot be maintained.

The plaintiff did not contend that this property was purchased
with any view of removal thereto, in which case, by the statute,
it might be exempt for the term of two years from taxation.   It
had no structure except that which it had surrendered to the
use of the parochial school, which, before the deed to the plain-
tiff, had always used the building as an incident to its own work.
It carried on no business and conducted no institution; and no
question on this point is presented by the report.

*Judgment for the defendant.*