INHABITANTS OF ORONO *vs.* SIGMA ALPHA EPSILON SOCIETY.

Penobscot.     Opinion March 2, 1909.

*Taxation. Exemptions. Literary and Scientific Institutions. University of Maine. Resolves, 1875, chapter 100. Private & Special Laws, 1865, chapter 532 ; 1866, chapter 59 ; 1866, chapter 66; 1867, chapter 372 ; 1871, chapter 281 ; 1897, chapter 551 ; 1903, chapter 223 ; 1903, chapter 393 ; Statute, 1863, chapter 210; 1878, chapter 44; 1887, chapter 119; Revised Statutes, 1871, chapter 11, sections 83, 87 ; 1903, chapter 9, sections 2, 3, 6, paragraph II ; chapter 15, sections 109-115 ; chapter 116, section 12.*

The general rule is that all real property within the State is subject to taxation, and an exemption which is an exception to the general rule must always be construed strictly.

Not all the real estate of literary and scientific institutions is exempt from taxation under the provisions of Revised Statutes, chapter 9, section 6, paragraph II, but only such real estate as is "occupied by them for their own purposes or by any officer thereof as a residence."

Although the University of Maine is chartered by the State and fostered by the State, yet it is not a branch of the State's educational system nor an agency nor an instrumentality of the State, but a corporation, a legal entity wholly separate and apart from the State.

By virtue of the provisions of chapter 551 of the Private and Special Laws of 1897, the name of the corporation then known as the "Trustees of the State College of Agriculture and the Mechanic Arts " was changed to the " University of Maine " but it was also expressly provided that " the said University of Maine shall have all the rights, powers, privileges, property,

duties and responsibilities, which belong or have belonged to the said trustees." This change of name did not change the status of the Institution or work its adoption as a part of the State or make its property the property of the State, but it remained the same distinct corporation as before.

The defendant, a Greek letter fraternity, is a corporation organized under the general laws of the State for the purpose of " erecting and maintaining a chapter house on the campus of the University of Maine, and to hold and dispose of all such real estate and personal property by purchase, lease, sale or otherwise as may be necessary for all such purposes and any and all other acts and things incident thereto and necessary, proper and convenient to the transaction of any such business of said corporation." In accordance with its chartered rights, the defendant coporation in 1904, under a parol license granted to it by the trustees of the University, errected upon land of the University, in Orono, a frame building, called a chapter house, with properly equipped dining room, kitchen, study and sleeping rooms, reception rooms and the like, the funds therefor being provided by issuing its corporate notes to the amount of ten thousand dollars, guaranteed by the trustees of the University. On April 1, 1907, this building was used and occupied by about thirty students of the University, who were members of an unincorporated branch or chapter of the defendant corporation known as Alpha Chapter of Sigma Epsilon Fraternity, and who had entire charge and management of the building, the furnishing of food and the hiring of servants. The house was used as such chapter houses usually are, as a home where the students lived while attending the University. No officer or professor of the University lived in the building or had any control or management of it other than the general supervision and control exercised over the general student body. The expenses of maintenance including board, fuel, service, repairs and a certain installment of indebtedness was apportioned among the active members of the chapter, no income or profit being divided among the stockholders, and no rental for the use of the land was exacted by the University. On April 1, 1907, the plaintiff town taxed the chapter house as real estate, under the provisions of Revised Statutes, chapter 9, section 3, which tax the defendant refused to pay on the ground that the property was exempt from taxation.

*Held:* 1. That the corporate purposes of the defendant are neither literary nor scientific, but rather they are domestic in the nature of a private boarding house and such is the business it carries on.

2. That the defendant is entitled neither to exemption from taxation as an educational or scientific institution, nor immunity as an agency or instrumentality of the State, but that its property was subject to taxation in the plaintiff town.

3. That the tax assessed against the defendant was not a tax against the University of Maine but against a separate and independent corporation.

On report.    Judgment for plaintiffs.

Action of debt to recover a tax for the year 1907, assessed by the plaintiff town against the Sigma Alpha Epsilon Society, a corporation located in the plaintiff town.    When the action came on for trial, an agreed statement of facts was filed and the case was reported to the Law Court upon the same with the stipulation that "if upon such facts the court is of opinion that the action is maintainable judgment is to be entered for the plaintiffs for the sum of $84.00 with interest as claimed in the writ, otherwise, the plaintiffs are to be nonsuit."

The material facts are stated in the opinion.

*Charles J. Dunn, and George E. Thompson,* for plaintiffs.

*Gould & Lawrence,* for defendant.

SITTING :    EMERY, C. J., WHITEHOUSE, SPEAR, CORNISH, KING, BIRD, JJ.

CORNISH, J.    This is an action of debt for a municipal tax for the year 1907 and comes to this court on an agreed statement of facts.    The defendant admits that the assessment of the tax and all of the proceedings connected therewith are regular in form, but denies liability on the ground that the property is exempt from taxation.    It appears from the agreed statement that the defendant, a Greek letter fraternity, is a corporation organized November 13, 1903, under the general laws of this State for the purpose of "erecting and maintaining a chapter house on the campus of the University of Maine, and to hold and dispose of all such real estate and personal property by purchase, lease, sale or otherwise as may be necessary for all such purposes and any and all other acts and things incident thereto and necessary, proper and convenient to the transaction of any such business of said corporation."

In accordance with its chartered rights, the defendant corporation in 1904, under a parol license granted to it by the trustees of the University, erected upon land of said University in Orono, a frame building, called a chapter house, with properly equipped dining room, kitchen, study and sleeping rooms, reception rooms and the

like, the funds therefor being provided by issuing its corporate notes to the amount of ten thousand dollars, guaranteed by the trustees of the University under authority of chapter 393 of the Private and Special Laws of 1903, to which reference will be made hereafter. On April 1, 1907, when the tax in suit was assessed this building was used and occupied by about thirty students of the University, who were members of an unincorporated branch or chapter of the defendant corporation, known as Alpha Chapter of Sigma Epsilon Fraternity, and who had entire charge and management of the building, the furnishing of food and the hiring of servants. The house was used as such chapter houses usually are, as a home where the students lived while attending the University. No officer or professor of the University lived in the building or had any control or management of it other than the general supervision and control exercised over the general student body. The expenses of maintenance including board, fuel, service, repairs and a certain installment of indebtedness was apportioned among the active members of the chapter, no income or profit being divided among the stockholders. The University exacted no rental for the use of the land.

Under these circumstances was the defendant corporation subject to taxation for this chapter house, which was taxed as real estate, under Revised Statutes, chapter 9, sec. 3?

1. The general rule is that all real property within the State is subject to taxation. R. S., ch. 9, sec. 2. Among the exemptions is "the real estate of all literary and scientific institutions occupied by them for their own purposes or by any officer thereof as a residence." R. S., ch. 9, sec. 6, par. II. Clearly the case at bar does not fall within this exception to the general rule. This is not a tax against the University of Maine, which is conceded to be a literary and scientific institution. The University does not own the property which is the subject of taxation here. This property is owned by an independent corporation and the owner is the party taxed and sued. The corporate purposes of the defendant are neither literary nor scientific. They are rather domestic in the nature of a private boarding house, and such is the business that it carries on.

In *Phi Beta Epsilon Corporation* v. *Boston,* 182 Mass. 457, the plaintiff, a corporation, with chartered purposes "to encourage and pursue literary and scientific work and to provide for its members a place for holding literary and scientific meetings, as well as .a place for study while students, owned and maintained a fraternity house, not on land of the Institute, for students of the Massachusetts Institute of Technology. The claim of exemption as being a literary or scientific institution was there set up, but the court found that the dominant use of the property was that of a boarding .house for the students and therefore held that the exemption did not apply. The opinion makes the distinction in these words. "The housing or boarding of students is not of itself an educational process any more than is the housing or boarding of any other class of human beings. The nature of the process, so far as respects its educational features, is not determined solely by the character of those who partake of its benefits. Suppose a number of students of the Institute of Technology should conclude to provide lodging and board for themselves on some co-operative plan and for that purpose should buy and occupy a house not in any way connected with the grounds or property of the institution, could it be said that such a house was used for an educational purpose? Suppose again, that these students were incorporated for the purpose of providing board and lodging for themselves and others while students, could it be said that the use of the real estate for such purposes was an educational process?" And see *People Ex rel Delta Kappa Epsilon Society* v. *Lawler*, 74 N. Y. App. Div. 547, affirmed in 179 N. Y. 535, 71 N. E. 1136.

It is true that in these cases cited the land itself was owned by the fraternity, while in the case at bar, the land was owned by the University. This fact, however, makes no legal difference in the result. Not all the real estate of literary and scientific institutions is exempt from taxation. It is only such as is "occupied by them for their own purposes or by any officer thereof as a residence." The lot on which this building was erected was occupied neither by the University nor by any officer thereof, but by an independent corporation for its own purposes and therefore it lost the privilege

of exemption which might under other conditions attach to it. Suppose for illustration the University had leased a lot to a citizen of Orono who erected a boarding house or a store for students · thereon, could it be contended that the boarding house or store could escape taxation, merely because it rested on land that might have been used by the University for its own purposes but in fact was not? The exemption, which as an exception must always be construed strictly, does not go so far. *St. James Ed. Inst.* v. *Salem*, 153 Mass. 185; *Foxcroft* v. *Straw*, 86 Maine, 76; *Foxcroft* v. *Campmeeting Assoc.*, 86 Maine, 78.

2. But the defendant goes further and claims not merely an exemption, but an immunity from taxation on the ground that the University of Maine is a branch of the State government an instrumentality of the State itself and therefore its property is public property, no more subject to taxation by the town of Orono than a jail, a court house or an insane hospital, and still further that the relations between the University and the defendant are such that the immunity reaches to it. The doctrine of such immunity is everywhere acknowledged when the facts present an apposite case. "No exemption is needed for any public property held as such," says the court in *Directors of Poor* v. *School Directors*, 42 Penn. St. 25. The same principle is recognized in *People* v. *Salomon*, 51 Ill. 52; *People* v. *Doe*, 36 Cal. 222; *Worcester County* v. *Worcester*, 116 Mass. 193; *Camden* v. *Camden, Vill. Corp.*, 77 Maine, 530; *Goss Co.* v. *Greenleaf*, 98 Maine, 436.

The necessary facts, however, are lacking here. The University of Maine, while chartered by the State and fostered by it especially in recent years, is not a branch of the State's educational system nor an agency nor an instrumentality of the State, but a corporation, a legal entity wholly separate and apart from the State. The defendant seeks to class it as a State institution in the same sense as are the public schools or the normal schools, but such is not its legal status.

A comparison with the normal schools of the State is a fair one to illustrate the difference. The State maintains at the present time four normal schools, one each at Farmington, Castine, Gorham

and Presque Isle.   This system originated in 1863 when a public act was passed providing for the appointment of commissioners to establish two normal schools.   Pub. Laws 1863, ch. 210.   This act also prescribed the qualifications for admission, the principles upon which the schools should be conducted, the course of study and made the State superintendent their superintendent under the approval of the Governor and Council.   Four half townships of wild land were appropriated for their benefit, the proceeds from the sale to be deposited in the State treasury to the credit of the normal school fund.   In this way the State itself took on a new form of public service and the educational system thus adopted became in fact an instrumentality of the State.   No corporation was created, no separate entity was brought into existence, but the State simply put out its own beneficent hand in a new direction, and the title to the property was taken in the name of the State. Private and Special Laws, 1867, ch. 372; Private and Special Laws 1871, ch. 281.   In the Revision of 1871, the normal school system took its place alongside the common school and free high school system.   Rev. St. 1871, ch. 11, secs. 83, 87.   In 1873, these schools were placed under the direction of a board of trustees, the governor and superintendent of schools to be members ex officio, and the others to be appointed by the Governor and Council.   In 1878 the Gorham Normal School was established, Pub. L. 1878, ch. 44, and in 1903 the normal school at Presque Isle, Priv. & Spec. Laws 1903, ch. 223.   The entire system is now regulated under Rev. St. 1903, ch. 15, secs. 109-115, and is an apt illustration of what is known as an instrumentality or agency of the State.

Contrast now the history and the legal status of the University of Maine.   By an act approved July 2, 1862, Congress donated a certain quantity of public lands to such States as might provide colleges for the benefit of Agriculture and the Mechanic Arts, the money to be received from the sales thereof to be invested as a perpetual fund and the income thereof to be appropriated by each State acting as trustee, to the endowment, support and maintenance of at least one such college.   Acting under this offer from the general government, the State of Maine by ch. 532 of the Priv. &

Spec. Laws of 1865, created certain persons therein named a body politic and corporate by the name of the Trustees of the State College of Agriculture and Mechanics Art, with power to establish and maintain such a college as was authorized by the act of July 2, 1862, to purchase and hold real estate and, through its trustees to have the general management of the institution.   A separate and distinct corporation was established and the separation between the college and the State thus created by the charter has always been observed and maintained.   By chap. 59, the town of Orono and by Chap. 66 of the Priv. & Spec. Laws of 1866 the city of Old Town were authorized to grant aid to the college.   No appropriation was made by the State to the institution for ten years after its incorporation, but by chapter 100 of the Resolves of 1875, the sum of $10500 was donated on condition that the trustees should "not under any circumstances contract any further debts in behalf of said college."   Annual appropriations have been made since that time with the exception of 1879 and in varying amounts, the appropriation for 1880 and 1881 being $3000 and $3500 respectively, and for 1907 and 1908 $110,000 each.   Such gifts, however, cannot change the character or legal status of the institution, any more than smaller gifts to academies and private hospitals could make them a part of the sovereign State.   In 1897 the name of the corporation was changed from the "Trustees of the State College of Agriculture and the Mechanic Arts" to the University of Maine, but it was expressly provided that "the said University of Maine, shall have all the rights, powers, privileges, property, duties and responsibilities, which belong or have belonged to the said trustees." Ch. 551, Priv. & Spec. Laws of 1897.

This change of name did not change the status of the institution or work its adoption as a part of the State or make its property the property of the State.   It remained the same distinct corporation as before.

Nowhere in the Revised Statutes is the University of Maine mentioned except in connection with the compensation of its trustees, R. S., ch. 116, sec. 12, and with the duties imposed upon the Experi-

ment Station which was established by ch. 119 of the Pub. Laws of 1887. It is nowhere recognized as a part of the educational system of the State. Even when power was conferred upon the trustees by ch. 393 of the Priv. & Spec. Laws of 1903 to guarantee loans for the construction of fraternity houses, it was expressly provided that "nothing herein contained shall be construed as binding the State of Maine to pay said loans, or any of them, or any part thereof, or any interest thereon ; and provided further that no appropriation therefor shall be hereafter asked of the State of Maine." No language could more plainly recognize the distinction between the corporation and the State. The legal status of this institution has been and is the same as that of the other colleges in Maine, chartered by Massachusetts or by Maine, Bowdoin College, Colby College and Bates College. They are each doing excellent work along the lines of higher education, but not one of them is a component part of the State's educational system.

The difference between the relation of the normal schools and of the University of Maine to the State is paralled in the difference between the various so called public or general hospitals of the State, and the two hospitals for the insane. The former are doing a necessary and charitable work and are recipients of the bounty of the State, but the latter alone represent the State itself in its sovereign capacity along charitable lines. The former are apart from the State, the latter a part of the State. Actions at law would lie against the former as against any other corporation, but not against the latter as no suit lies against the sovereign power.

The defendant calls attention to the case of *Auditor General* v. *Regents of the University of Mich.*, 83 Mich. 467, 47 N. W. 440, 10 L. R. A. 376, where the court held that property owned by the defendants was owned by the State and therefore exempt from taxation under a statute exempting all public property belonging to the State. The court, however, in that case based their decision upon the fact that by the constitution of Michigan the Regents of the University are made an agency of the State. "By these provisions" say the court, "the body corporate, which was at first the creation

of the legislative will, has received the sanction of the constitution and has become a part of the fundamental law and in some respects is not subject to legislative control or interference.    It is not, however, independent of, but is a part, of the State, a department to which the education of literature, science and the arts is confided." This strikingly different situation readily distinguishes that case from the one at bar.    That decision is in entire harmony with this opinion.

3.    The second step by which the defendant corporation seeks to appropriate any such immunity from taxation as might belong to the University is equally difficult of accomplishment under the facts as they exist, but it is unnecessary to consider the reasons at length, because the first step is itself, impossible.

The defendant corporation is entitled neither to exemption as an educational or scientific institution, nor immunity as an agency or instrumentality of the State.    Its property was subject to taxation by the plaintiff town and in accordance with the stipulation of the parties the entry must be,

> *Judgment for the plaintiffs for $84,*
> *with interest as claimed in the writ.*