BESSIE M. HEATH ET AL.,

APPLTS. FROM DECREE OF JUDGE OF PROBATE
IN RE ALLOWANCE OF LAST WILL OF ORA E. REED

BESSIE M. HEATH ET AL.,

APPLTS. FROM DECREE OF JUDGE OF PROBATE
IN RE DISALLOWANCE OR DENIAL OF MOTIONS
IN ESTATE OF ORA E. REED

Cumberland. Opinion, April 9, 1951.

*Hutchinson, Pierce, Atwood & Scribner,*

*John W. Quarrington,*

*John J. Keegan,* for proponents.

*Franklin R. Chesley,*

*Edward S. Titcomb,*

*James H. Titcomb,* for contestants.

SITTING: MURCHIE, C. J., FELLOWS, MERRILL, NULTY, WIL-
LIAMSON, JJ. (THAXTER, J., did not sit)

MERRILL, J. On exceptions. Ora E. Reed, the testatrix, died on the eleventh day of October, A. D. 1948 in a nursing home in Richmond, in the County of Sagadahoc and State of Maine. A document dated April 12, 1940, purporting to be her last will and testament, was offered for probate in the Probate Court for the County of Cumberland, State of Maine, by the executors named therein, who are here the appellees. The petition for probate of the will alleged that the testatrix last dwelt in Portland, in said County of Cumberland. The Judge of Probate for Cumberland County denied motions by the contestants, which motions sought the dismissal of the petition for probate of the will on the ground that the testatrix died a resident of Richmond, in the County of Sagadahoc, and that because of the pro-

visions of R. S., Chap. 140, Sec. 9, the Probate Court for Cumberland County was without jurisdiction in the premises. From this decision an appeal was taken to the Supreme Court of Probate. After hearing upon the petition, in which the contestants again raised the question of jurisdiction, the Judge of Probate held that the testatrix died a resident of Cumberland County and allowed the document presented as her last will and testament. From this decision of the Judge of Probate an appeal was taken to the Supreme Court of Probate. The aforesaid appeals were heard together in the Supreme Court of Probate and decree was entered holding that the testatrix died a resident of and domiciled in Portland, in the County of Cumberland and State of Maine, allowing the document presented as her last will and testament and dismissing both appeals. To the decree of the Justice of the Supreme Court of Probate, as well as to certain rulings of his admitting and excluding testimony and evidence, exceptions were alleged and allowed. It is on these exceptions that the case is now before this court.

The bill of exceptions for convenience is divided into three numbered parts. Part numbered 1 is an exception to so much of the decree of the Justice of the Supreme Court of Probate as overruled the motion of the contestants to dismiss the petition, and his finding that the decedent was domiciled in and a resident of the city of Portland at the time of her decease. Part numbered 2 consists of a group of separate exceptions therein lettered A to H, both letters inclusive, the several exceptions being to rulings of the presiding justice admitting or excluding testimony and evidence objected to by the contestants. Part numbered 3 is an exception to the decree of the Supreme Court of Probate allowing the will, and especially to so much thereof as held that the testatrix was of sound mind on April 12, 1940, the date of the execution thereof. For convenience we will first consider the exceptions contained in parts 1 and 3 of the bill

of exceptions. These exceptions are to the decree and findings of the Supreme Court of Probate.

By and in the Reasons of Appeal, the issues before the Supreme Court of Probate were (1) the jurisdiction of the Probate Court for the County of Cumberland over the proceedings, (2) the execution of the will, (3) the competency of the testatrix to make a will and (4) whether its making and execution were procured through fraud, deceit and undue influence.

The validity of a decree of the Supreme Court of Probate can be challenged before this court only by exceptions. *Cotting* v. *Tilton,* 118 Me. 91; *Tuck* v. *Bean,* 130 Me. 277; *Bronson, Aplt.,* 136 Me. 401; and *Edwards, Aplt.,* 141 Me. 219. Exceptions reach only errors in law. *Clapp* v. *Balch,* 3 Me. 216; *Laroche* v. *Despeaux,* 90 Me. 178. We said in *Cotting* v. *Tilton,* 118 Me. 91, 94:

> "The findings of the Justice in the Supreme Court of Probate in matters of fact are conclusive, if there is any evidence to support them. And when the law invests him with the power to exercise his discretion, that exercise is not reviewable on exceptions. If he finds facts without evidence, or if he exercises discretion without authority, his doings may be challenged by exceptions."

See also *Mitchell et Alii, Re: Will,* 133 Me. 81; *McKenzie* v. *Farnham,* 123 Me. 152; *Packard, Aplt.,* 120 Me. 556; *Palmer's Appeal,* 110 Me. 441.

The sufficiency of bills of exceptions to the findings and decrees of the Supreme Court of Probate is determined by the same rules of law which determine the sufficiency of bills of exceptions in other civil cases, and especially by those applicable to bills of exceptions from the findings and decisions of a single justice in cases tried without the intervention of a jury.

As said in *Bronson, Aplt.* 136 Me. 401 with respect to exceptions to a decree of the Supreme Court of Probate:

> "It is now well settled that this Court under R. S., Chap. 91, Sec. 24 (now R. S., Chap. 94, Sec. 14), has jurisdiction over exceptions in civil and criminal proceedings only when they present *in clear and specific phrasing the issues of law to be considered*. The presentation of a mere general exception to a judgment rendered by a justice at *nisi prius* is not sufficient under the statute. *Gerrish, Exr.* v. *Chambers et al.*, 135 Me. 70; 189 A. 187. *An exception to a judgment rendered in the Supreme Court of Probate is within the rule.*" (Emphasis ours.)

Exceptions to the findings of a single justice on the ground that they are erroneous in law, to be within the foregoing statutory rule must on their face show in what respect the ruling is in violation of law. In the Bronson case, which held that the bill of exceptions was insufficient, it was alleged that "said rulings were erroneous and prejudicial to her and she excepts thereto and prays that her exceptions be allowed."

The bill itself must state the grounds of exceptions in a summary manner. The bill must be able to stand alone. See *Bradford* v. *Davis*, 143 Me. 124, 56 Atl. (2nd) 68. The bill of exceptions must show what the issue was and *how the excepting party was aggrieved. Jones* v. *Jones*, 101 Me. 447.

If the ground of exception to the finding of a single justice is that it was erroneous in law because there was no evidence to support it, or because his finding was made without any evidence, such ground must clearly appear in the bill of exceptions. A general exception on the ground that the finding was erroneous in law is not sufficient. As said in *Wallace* v. *Gilley et al.*, 136 Me. 523:

> "The exception, however, is not properly presented. It is directed generally and indiscrimi-

> nately to the judgment below. It is not stated
> whether the error alleged is based upon the erro-
> neous application of established rules of law, or
> upon findings of fact unsupported by evidence, or
> on other exceptionable grounds. It is now settled
> that the presentation of a mere general exception
> to a judgment rendered by a justice at nisi prius
> does not comply with the law."

If it is claimed that the error in law is because the find-
ing of fact is without any evidence to support it, the bill of
exceptions should contain such allegation or its equivalent.
The bill of exceptions in the present case, so far as it re-
lates to the finding by the Justice of the Supreme Court of
Probate that the testatrix died a resident of Cumberland
County, and to his decision that the document presented
was her last will and testament based upon his finding that
she was possessed of testamentary capacity, nowhere alleges
that such findings or either of them, were made without evi-
dence to support them. Nor does the bill of exceptions con-
tain language equivalent to such allegations. On the other
hand, the bill of exceptions itself with respect to those sub-
jects clearly shows that there was evidence with respect to
each of them to be weighed and passed upon by the presid-
ing justice and from which he could draw conclusions which
supported his findings with respect thereto.

The effect of the statements contained in the bill of excep-
tions respecting these issues amounts to no more than that
the presiding justice erred in making his choice between
two conclusions, either of which he could have made from
the facts set forth in the bill of exceptions. The exceptions
to so much of the decree as relates to the jurisdiction of the
court and to the sustaining of the will are insufficient.
Neither of them either by direct allegation or by necessary
inference alleges any error of law on the part of the pre-
siding justice. They must be overruled as insufficient.

Realizing, however, the importance of this case to the

parties, involving as it does an estate of approximately one-half million dollars, we have carefully examined the case upon its merits so far as these issues are concerned. The reading of the entire record presented to us, consisting of 1,332 pages, together with a volume of exhibits consisting of 75 pages, and the briefs of the parties containing 187 pages, and an examination of the cases cited was no small task. In approaching this task we were bound by the rule, too well established to require further mention, that if there is any evidence to support the findings and decree of the Supreme Court of Probate, exceptions will not lie. Even had the bill of exceptions been sufficient, because of the foregoing rule we would not have been obliged nor would it have been within our province to study the voluminous report of the evidence in this case for the purpose of ascertaining on which side the evidence preponderates or what testimony we regard as most entitled to credence, or which of alternative possible inferences we would have drawn therefrom. Our duty under such circumstances would be confined to the determination of whether the conclusions reached by the Justice of the Supreme Court of Probate were erroneous as a matter of law. Questions of fact once settled by the Justice of the Supreme Court of Probate, if his findings are supported by any evidence, are finally decided. Such justice and he alone is the sole judge of the credibility of witnesses and the value of their testimony. It is only when his findings are made without any evidence to support them that we can disturb them on exceptions as erroneous in law.

From a careful and thorough study of the record and the briefs we are convinced that no injustice is being done by overruling on technical grounds those exceptions, contained in parts 1 and 3 of the bill of exceptions, which respectively relate to the questions of jurisdiction and to the allowance of the will. The decree of the Supreme Court of Probate, affirming as it does the jurisdiction of the Probate Court of

Cumberland County and allowing the will of the decedent, is not only supported by credible evidence, but it is inconceivable to this court that the Supreme Court of Probate could have arrived at any other decision upon the record before it. The evidence clearly demonstrated that the testatrix changed her domicile from Richmond to Portland sometime in 1920 or 1921, and retained her domicile in Portland to the time of her death. The evidence clearly demonstrated that the will was duly executed with all of the required formalities prescribed by our Statute of Wills. The evidence further demonstrated, even beyond a reasonable doubt, that at the time the testatrix executed the same she was a person of sound mind and of sufficient age as required by R. S., Chap. 155, Sec. 1. There was no evidence that even remotely suggested that the execution of the will was obtained by fraud, deceit or undue influence.

A discussion or analysis of the voluminous testimony upon these issues would serve no useful purpose. The decree of the Supreme Court of Probate was amply supported by credible evidence. It was not erroneous in law and the exceptions to it set forth in parts 1 and 3 of the bill of exceptions, even if sufficiently stated, would have to be overruled.

With respect to the group of exceptions contained in that part of the bill of exceptions numbered 2, we will discuss later the exceptions contained therein in the portion thereof lettered G. As to all of the other exceptions contained in part 2 of the bill of exceptions, we will say as did Chief Justice Dunn in *Eastman, Appellants*, 135 Me. 233, they are "Exceptions to rulings excluding evidence, and admitting evidence, detail whereof would promote no serviceable end (and they) are not sustainable. Clearly no ruling did prejudice to any legal right. *Neal* v. *Rendall*, 100 Me. 574; 62 A. 706; *Ross* v. *Reynolds*, 112 Me. 223; 91 A. 952." They must be overruled.

Our only reason for discussion of the exceptions con-

tained in part 2 and lettered G is for the purpose of re-affirming at this time an established rule of evidence, which reaffirmation we believe may be serviceable in the future. One of the issues before the Supreme Court of Probate was the mental capacity of the testatrix. On that issue the burden of proving as a fact that the testatrix at the time of the execution of the will by her was of sound mind was upon the proponents of the will. The proponents were permitted to ask numerous non-expert witnesses, who were acquainted with the testatrix and who had business and social contacts with her, questions of the following tenor:

"Q. In such times as you did see her there, did you observe any facts about her conversation that indicated anything singular or unusual respecting her mental condition?

A. No, sir.

Q. Did you ever hear her say anything or do anything that indicated to you that her mind was affected or weakened?

A. No, sir."

These questions, propounded to numerous witnesses, were admitted and answered over the objection of the contestants and exceptions in each instance were taken and allowed and the exceptions properly preserved and allowed in the bill of exceptions in part 2 G thereof. If this testimony was improperly admitted it would be prejudicial.

The objection to these questions was based upon the rule that a non-expert witness (other than a family or other skillful and reputable physician with adequate opportunity for observing and judging his mental qualities, or an attesting witness to the will) is not allowed to give a *direct* opinion as to the mental condition of a testator, when that condition is in issue. These questions, however, were clearly admissible under the rule laid down by this court in *Robinson* v. *Adams,* 62 Me. 369. In that case Narcissa

Stone and William G. Barrows, who were not witnesses to the will then in question, were offered as witnesses. With respect to their testimony we said:

> "The exceptions to the answers of Narcissa Stone and Wm. G. Barrows are based on the assumption that they were expressions of opinions by non-experts. These answers were given in connection with details of certain facts introduced by the appellees, in refutation of the allegation of unsoundness of mind made by the appellant. They were both mere negations; statements that they did not observe certain facts touching the mental condition of the testatrix; i. e., one said she did not observe any failure of mind, and the other, who was a witness to a former will, that he observed nothing peculiar. *State* v. *Pike*, 49 N. H., 408.

> The only objection in the argument is, that these were expressions of opinion on the question of testamentary capacity.

> The question, whether opinions of witnesses not experts are, in all cases where insanity or delusions are in question, to be excluded, has recently been much discussed, particularly in a learned opinion by Mr. Justice Doe of the Supreme Court of New Hampshire.

> If the case required it, we might, perhaps, review some of the former decisions of this court. But, certainly nothing less than a *distinct expression of the opinion* (emphasis ours) of the witness, *given as such opinion directly* (emphasis ours), comes within our rule. Mere negations, such as stated by these witnesses, *do not give to the jury an affirmative opinion* (emphasis ours). They, at most, state negatively that nothing was observed by them. This is not an opinion of the witness, but had relation to a fact, as to the condition of the person."

The foregoing case of *Robinson* v. *Adams* was quoted in *Fayette* v. *Chesterville*, 77 Me. 28. See also *Plummer* v. *Life Insurance Co.*, 132 Me. 220, 226.

Maine is not peculiar and alone in admitting such testimony. The same rule prevails in Massachusetts. See *Gorham* v. *Moor*, 197 Mass. 522; *Jenkins* v. *Weston*, 200 Mass. 488; *Leary* v. *Webber Co.*, 210 Mass. 68; *Commonwealth* v. *Borasky*, 214 Mass. 313; *Raymond* v. *Flint*, 225 Mass. 521; *Old Colony Trust Co.* v. *Di Cola*, 233 Mass. 119; *Neill* v. *Brackett*, 241 Mass. 534. In fact the specific questions here objected to are those the admissibility of which was sustained in *Gorham* v. *Moor, supra*. When the mental condition of a person is in issue these questions and questions of similar import are admissible. They were admissible in this case, and there was no error upon the part of the presiding justice in permitting them to be asked and answered.

There being no prejudicial legal error in any ruling challenged by the bill of exceptions, the exceptions must be overruled.

*Exceptions overruled in both cases.*