INHABITANTS OF OWLS HEAD
*vs.*
JOHN E. DODGE, JR.

Knox.    Opinion, February 13, 1956.

474

*Domenic Cuccinello*, for plaintiff.

*Frank F. Harding*, for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, CLARKE, JJ.

FELLOWS, C. J. This is an action of debt for taxes brought by the inhabitants of the Town of Owls Head against John E. Dodge, Jr. in Superior Court for Knox County. The case was heard by a Justice of the Superior Court, in vacation by agreement, and judgment rendered for the plaintiff for $1912.50. The case comes to the Law Court on exceptions by the defendant.

The case is this: The town of Owls Head, Maine held a legal town meeting on March 2, 1953 and at the meeting the

town clerk, selectmen, assessors, tax collector, and treasurer were elected and qualified. No assessment was made against the defendant, or against the property, for the tax years 1949 to and through 1953. The property in question was supplementally assessed and entries were made in the valuation books for the years 1949-1953. On August 17, 1953 supplemental tax warrants and tax certificates covering the property were given to the tax collector. The collector sent bills for taxes due. The taxes were not paid, and the collector was directed to bring suit against the defendant. A formal request for payment was made of defendant Dodge. The defendant refused to pay and suit was brought.

The property now in question is located on land known as the Rockland Municipal Airport. There was no tax on the land. The assessors assessed certain buildings on the land. The defendant gave no list of properties to the assessors in order to claim any exemption. The Airport made no list or claim through any attorney or representative, nor did the city of Rockland.

The defendant John E. Dodge, Jr. operated the Rockland Municipal Airport under a lease from the city of Rockland dated August 4, 1949 to run for five years with privilege of renewal. During the World War II, the airport was leased October 19, 1943 to the United States Government for the duration of the war, and in 1946 the government gave the airport back to the city of Rockland under a revocable permit, which permit has not been revoked.

The excepting party is bound to see that the bill of exceptions includes all that is necessary to enable the court to decide whether the rulings or decision of which he complains were or were not erroneous. Failing to do so, his exceptions must fail. The Law Court has jurisdiction over exceptions only when they clearly present the issues to be considered. The bill itself should show the claims and contentions of the parties, and enough of facts, allegations, or

claims, as to be clearly understood. *Bronson, Aplt.*, 136 Me. 401, 402; *Bradford* v. *Davis*, 143 Me. 124, 128; *Heath et al., Aplts.*, 146 Me. 229, 232, 233. The issues presented by the defendant's bill in this case are not clear in every instance. The bill does not show, for example, exactly the error claimed in all instances, and why it was error. The defendant's brief attempts to make the contentions clear, but a brief is no part of a bill of exceptions. *Heim* v. *Coleman*, 125 Me. 478.

Again, an exception to be valid must raise a question of law. If it calls in question the interpretation of a written statement or a written document it must specify in what regard it raises a question of law. The bill of exceptions must show clearly and distinctly that the ruling was not on a question where law and fact are so blended that it is impossible to tell on which the adverse ruling was based. See *American Sardine Co.* v. *Olsen*, 117 Me. 26; *Laroche* v. *Despeaux*, 90 Me. 178.

The bill of exceptions states that the defendant is aggrieved by the findings of the presiding justice and his claims of error are as follows: (1) That the presiding justice excluded evidence of the value of the contract between the defendant and the city of Rockland, (2) that the presiding justice erred in finding that there was a legal supplemental assessment, — the error not specifically stated, (3) that there was error in finding that a legal supplemental assessment was made without any certificate being made by the assessors, (4) that there was error in finding that taxes on specific items can be properly assessed against the defendant in possession of land exempt from taxation, (5) that it was erroneous to find that a legal assessment could be made against the defendant in possession of land exempt from taxation, (6) that it was error to find that the property consisting of airport and landing field is not entirely exempt from taxation, (7) that it was error to hold that

each of the buildings assessed was not used for public purposes, (8) that judgment was not rendered in vacation. Although some exceptions do not show the specific error claimed, several may be considered as doing so, and we, therefore, consider the claims made in the bill so far as shown.

EXCEPTION 1. The value of the leasehold interest in and to the entire airport and buildings is not material. The evidence offered was properly excluded. No tax was claimed on the land. The case involves only the right of the plaintiff town to tax certain buildings that are claimed to be "not devoted to public use." The value of the property taxed only was material. Whether the defendant made profit or loss was not involved. The entire property was not taxable, and the value of the lease of the entire property was not admissible, under the circumstances here, to determine the value of a particular building. Revised Statutes, 1944, Chapter 81, Sections 3, 8, (Revised Statutes 1954, Chapter 92, Sections 3, 9). This first exception is overruled.

EXCEPTIONS 2 - 7. The next six exceptions relate to the legality of the supplemental assessment and claims that the presiding justice erred in his findings of law and facts showing legality, and that it was error not to find that the entire airport property, with buildings thereon, was exempt. The defendant claims that "this so-called 'supplemental assessment' was not actually the work of the assessors, but was the work of one of the assessors, his wife and an attorney;" and that there was "no certification as required by law to create a valid supplemental assessment" citing Revised Statutes 1944, Chapter 81, Section 29 (Revised Statutes 1954, Chapter 92, Section 30).

The presiding justice said in his decision: "This court finds that the assessors were duly elected, that they had jurisdiction to assess the supplemental tax (unless the

property taxed be exempt), and that they did make a proper assessment of the supplemental tax. This being a proceeding not involving a forfeiture, if there were any errors or irregularities in the assessment of the tax, that they were errors in procedure which did not increase the taxpayers' share of the public burden and did not occasion him any other loss, and therefore did not invalidate the assessment. I therefore find the assessment properly made by the three assessors."

"As to the claim of the defendant for exemption, it is borne in mind that exemption from property taxes is the exception and not the rule, that all doubt as to the meaning of the tax statute must be weighed against exemptions. The burden is on the person claiming a tax exemption to establish his right to such exemption." * * *.

"The defendant claims that ownership and not public use is the determining factor on the question of exemption. This court cannot accede to such a view. It is ruled as a matter of law that only that part of the property taxed to the defendant as is appropriated for public use is tax exempt under the provision of the Statute relied upon by the defendant."

"This calls for an examination of the obligations of the defendant under the lease from the City of Rockland, and the use actually made of the property. Under the 8th clause of the lease the defendant agreed to operate the airport for the use and benefit of the public, to make available all airport facilities and service to the public, without discrimination. The obligations of the defendant under this lease are a public duty and any reasonable use of the property in carrying out those obligations is a public use."

"Taking into consideration the obligation of the defendant under the lease and all of the testimony in the case in respect thereto, I find that the use of building No. 6, the

house occupied by the defendant and his family and the use of building No. 7, the service office, hangar and repair shop, are reasonably necessary for airport purposes to carry out the obligations of the defendant under his lease, and that they have been used for public purposes during the years for which the taxes have been imposed, and I find these properties exempt from taxation."

"As to the remainder of the buildings taxed, to wit: buildings Nos. 1, 2, 3, 4, and 5, I find that they either have not been used for public purposes or that their use has been an intermixture of public and private purposes, and that the public use has been merely incidental or trivial to the private use of the property. I therefore find that these buildings are not exempt from taxation."

"The amount of taxes lawfully assessed on these properties by supplemental taxes for the years 1949 to 1953 inclusive, respectively, is as follows, viz.:

| #1 | The Joy House so-called | $127.50 |
|----|------------------------|---------|
| #2 | The Texaco Barn, so-called | 127.50 |
| #3 | The Knowlton warehouse, so-called | 510.00 |
| #4 | The Marcus warehouse, so-called | 765.00 |
| #5 | The Elmer Manufacturing plant, so-called | 382.50 |
| | | $1,912.50" |

The record shows that defendant Dodge carried on the airport according to the lease, and that in addition thereto he carried on a personal "fishing business" and a personal "flying service" or school of instruction, and that he rented to some individuals and corporations certain buildings on the airport properties for their own use or business. "The Joy House" was occupied by one Joy who was a "fishing captain" and incidentally worked for defendant on the airfield. Joy and his family occupied the house as a residence. Previously one Cochrane used it as a residence for his fam-

ily and worked for defendant in the fishing business, and was one of defendant's pupils, and worked for defendant in the flying service. "The Texaco Barn" was used for storage of grease and oils by the Texaco Company. The Texaco Company paid rent to defendant. "The Knowlton warehouse" was rented by Knowlton Brothers in the furniture business, and used by them for storage of furniture—previously the warehouse was rented by defendant for apartments to individuals in the "personal flying service." "The Marcus warehouse" was used for storage of furniture by Stonington Furniture Co. "The Elmer Manufacturing Plant" were buildings rented and used to manufacture prefabricated houses. Previously this manufacturing plant was used by Crie Hardware Co. for storage.

The findings of the trial court sitting without a jury, must be upheld if based upon reasonable and credible evidence. *Mitchell et al., re Will,* 133 Me. 81, 174 Atl. 38. *Jolovitz* v. *Redington & Co.,* 148 Me. 23; and there is no error of law, *Heath et al. Aplts.,* 146 Me. 229, 239, 79 Atl. (2nd) 810; *Consumers Fuel Co.* v. *Parmenter,* 151 Me. 83, 84.

Exemptions in tax statutes are strictly construed. *O'Connor* v. *Wassookeag School,* 142 Me. 86; *Orono* v. *Sigma Alpha Epsilon Society,* 105 Me. 214.

The property of a municipality not devoted to public use is not exempt from taxation. Revised Statutes 1944, Chap. 81, Sec. 6, Subsection 1 (now R. S., 1954, Chap. 92, Sec. 6) ; *Inhs. of Boothbay* v. *Inhs. of Boothbay Harbor,* 148 Me. 31. See also *Greaves* v. *Houlton Water Co.,* 143 Me. 207, and *McDonald* v. *Stubbs,* 142 Me. 235.

A person in possession of real estate is liable for taxes thereon. Revised Statutes 1944, Chap. 81, Sec. 8, R. S., 1954, Chap. 92, Sec. 9. Interest by contract or otherwise in land exempt is taxable as real estate. Revised Statutes, 1944, Chap. 81, Sec. 3, R. S., 1954, Chap. 92, Sec. 3.

Airports and landing fields and buildings thereon are land for the purpose of taxation. R. S., 1944, Chap. 81, Sec. 6 (Revised Statutes 1954, Chap 92, Sec. 6) ; Revised Statutes, 1944, Chap 9, Sec. 21, Rule X (R. S., 1954, Chap. 10, Sec. 22) ; See also *Inhs. Boothbay* v. *Inhs. Boothbay Harbor,* 148 Me. 31.

A leasehold is an interest in land for the purpose of taxation. R. S., 1944, Chap. 81, Sec. 11 (R. S. 1954, Chap. 92, Sec. 12) ; *Orono* v. *Sigma Epsilon Society,* 105 Me. 214, 74 Atl. 19; *Foxcroft* v. *Straw,* 86 Me. 76, 29 Atl. 950; *Portland Terminal Co.* v. *Hinds et al.,* 141 Me. 68, 39 Atl. (2nd) 5.

"In our view only property appropriated for public uses is tax-exempt under the Statute." *Inhs. of Boothbay* v. *Inhs. of Boothbay Harbor,* 148 Me. 31. The way in which the property is used is the key to whether or not it is tax exempt. In the case of *Orono* v. *Sigma Alpha Epsilon Society,* 105 Me. 214, 74 Atl. 19, the court say "Not all the real estate of literary and scientific institutions is exempt from taxation. . . . Suppose for illustration the university had leased a lot to a citizen of Orono who erected a boarding house or a store for students thereon, could it be contended that the boarding house or store could escape taxation, merely because it rested on land that might have been used by the university for its own purposes but in fact was not? The exemption, which as an exemption must always be construed strictly, does not go so far. *St. James Ed. Inst.* v. *Salem,* 153 Mass. 185; *Foxcroft* v. *Straw,* 86 Me. 76; *Foxcroft* v. *Campmeeting Asso.,* 86 Me. 78."

The general rule of construction of tax statutes is that taxation is the rule and that exemptions are exceptions to the rule and are to be strictly construed. *O'Connor* v. *Wassookeag School, Inc.,* 142 Me. 86, 46 Atl. (2nd) 861.

The statutory provision on supplemental assessments is in part as follows: (Revised Statutes, 1944, Chap. 81, Sec.

29), (Revised Statutes, 1954, Chap. 92, Sec. 30.) — "When any polls or estates liable to taxation have been omitted from assessment within five years from the last assessment date the assessors for the time being may by a supplement to the invoice and valuation and a list of assessments assess such polls and estates their proportion of such tax according to the principles on which the assessment was made, certifying that they were omitted. Such supplemental assessments shall be committed to the collector for the time being with a certificate under the hands of the assessor stating that they were omitted and that the powers in the previous warrant, naming the date of it, are extended thereto and the collector has the same power and is under the same obligation to collect them as if they had been contained in the original list; and all assessments shall be valid notwithstanding that by such supplemental assessment the whole amount exceeds the sum to be assessed by more than five per cent (5%) or alters the proportion of tax allowed by law to be assessed on the polls."

The assessors' book on valuation and list of assessments noted the assessment of the supplementary tax in each of the instances where a supplementary tax was assessed, and stated that the tax had been omitted. The book was signed by the three assessors. The supplemental assessments were committed to the collector with certificates, signed by the three assessors, stating that they were omitted, naming the date of previous warrant. Supplemental tax warrants were given to the collector, signed by the three assessors, and also supplemental tax certificates were given the collector signed by the three assessors. The certificates and warrants were on forms reprinted from the Maine Assessors Manual by permission of the Maine Municipal Association, and then stated that the assessments noted on a certain page of the assessment books were omitted by mistake and that the lists are supplemental to original valuation and list of assess-

ments of the year in question, and made by virtue of R. S., Chapter 81, Section 29.

The defendant contends that the supplemental assessment was the work of "an assessor, his wife and an attorney." The assessors adopted the work and made it their own. "It was agreeable to all of them." By their signatures this appears. In these days almost all offices have clerical assistance or a typist, and when assessors employ an attorney, such employment certainly makes for correctness and legality. The exhibits offered by the plaintiff show that certification was made in each instance, and that a supplemental tax warrant in each instance was given the Tax Collector. The warrants and supplemental tax certificates were each signed by the three assessors. There was sufficient credible evidence for the sitting justice to find, as he did find, that there was a legal supplemental assessment and certification.

The defendant cites *Topsham* v. *Purinton,* 94 Me. 354, 47 Atl. 919 as authority that in this case there was no legal supplemental assessment of taxes, which case holds that before supplemental assessments are committed to the collector they should be accompanied with a certificate, under the hands of the assessors, stating that they were omitted by mistake. There was evidence that this was done in the case at bar. In the *Topsham* case, however, there was no authentication by the signatures of the assessors. The assessors did authenticate in the case at bar as shown by the exhibits and by the testimony of one of the assessors.

The defendant also cites *Portland Terminal Co.* v. *Hinds,* 141 Me. 68, 72, holding that the full power of taxation is vested in the legislature and is measured not by grant but by limitation, and no tax assessment is valid, as against anyone except the owner, except by authority of legislative enactment. See Opinion of Justices, 123 Me. 573, 121 Atl. 902.

"Taxation must be practical. It must bring results."
*Sears Roebuck Co.* v. *Presque Isle,* 150 Me. 181, 184. While
the statute must be followed, the manner of following the
terms of the statute often depends on the human qualities
of the individuals who form the local board of assessors.
All boards in Maine endeavor to be legally correct in their
assessments, but the individual members differ, and their
methods of doing business and keeping records differ. The
records of many boards may not meet with the approval of
a technical lawyer or an experienced accountant, yet they
accomplish the purpose because capable of being read and
understood, and capable of being construed as within the
terms of the statute. Errors or irregularities in a proceed-
ing, not involving a forfeiture, which do not take away the
taxpayer's rights or increase his proper share of the public
burden, do not necessarily invalidate an assessment. If
minor errors or irregularities were held to invalidate an
assessment, there would be very few, if any, valid assess-
ments in the towns of Maine. Assessors are often inexpe-
rienced and often elected on popularity or because they are,
in some instances, the only persons willing to accept the
office. "When forfeitures are not involved, proceedings for
the collection of taxes should be construed practically and
liberally," *Cressey* v. *Parks,* 76 Me. 532; *Norridgewock* v.
*Walker,* 71 Me. 181; *Bath* v. *Whitmore,* 79 Me. 182.

In *Inhabitants of Athens* v. *Whittier,* 122 Me. 86, 118, Atl.
897, various technical defects in the assessment and taxation
of the defendant were raised by the defendant as part of
his defense for refusal to pay taxes. In answer to these tech-
nical defenses the court said: "In this form of action mere
technical defenses have never found favor with the courts.
*Cressey* v. *Parks,* 76 Me. 532; *Bath* v. *Reed,* 78 Me. 276;
*Rockland* v. *Ulmer,* 87 Me. 357. As this court said in
*Greenville* v. *Blair,* 104 Me. 444, 'This action will not be de-
feated by any mere irregularities in the election of asses-

sors or collector or in the assessment itself, but only by such omissions or defects as go to the jurisdiction of the assessors or deprive the defendant of some substantial right or by the omission of some essential requisite to the bringing of the action.' Also see *Rockland* v. *Farnsworth*, 111 Me. 315." So long as the defendant has not suffered any substantial loss as a result of any irregularity in the tax assessment proceedings, his technical defenses will not be honored. As the court, in the *Athens* case concluded at page 90: "It does not appear that any omission or irregularity pointed out in the proceedings has occasioned the defendant any hardship, loss or injury."

In his bill of exceptions the defendant says that the decision of the presiding justice was not rendered in vacation. This contention of the defendant is because, he says in his brief, "the decree was not filed until after the usual time of the closing of business of the Clerk of Court's office late in the afternoon of the day preceding the convening of the next term of court." The docket entries state that the decision was filed in the clerk's office on November 1, 1954. The term of Court for Knox County began on November 2, 1954. The preceding term in Knox County was in May 1954, and at the May term 1954 the docket shows that by agreement of parties, the case was to be heard by the court in vacation. The case was heard in vacation on June 29, 1954, and judgment for the plaintiff received and filed in vacation on November 1, 1954. See *Bolduc et al.* v. *Granite State Ins. Co.*, 147 Me. 129, 83 Atl. (2nd) 567.

There is no reversible error. The findings of the presiding justice were legal and proper and authorized by the record.

*Exceptions overruled.*