DAVID B. EASTMAN ET AL.

APPELLANTS FROM DECREE OF JUDGE OF PROBATE.

Waldo.    Opinion, October 9, 1937.

*William H. Niehoff*, for appellants.
*James M. Gillin*, for appellee.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

DUNN, C. J. This was the contest of a will, on the alleged grounds that, at the time of the execution of the instrument, its signer, a cousin to the contestants, was incompetent to make it, and that its making and execution were procured through the fraud, deceit and undue influence of the principal beneficiary.

The Superior Court, sitting as the Supreme Court of Probate, affirmed the decree of the Probate Court, which had probated, that is, allowed, the document as and for the last will of the testator, George Glover, late of Knox, deceased.

The will (attested by two gentlemen, lawyers of standing and repute in the profession, and their typist, all of whom, in the trial, gave testimony, as did other persons, for the proponent,) purported to dispose of $100 for the care of the family burial lot, to bestow a legacy of $200 on testator's cousin, Mary Hustus, or, should she predecease testator, on another cousin of his, Jane Jones of name, and to pass the residue to one Myrtle Tucker, a stranger both by blood and marriage, in the following item:

> "Third — And lastly I give, bequeath and devise to my good friend Myrtle Tucker of Knox, who has cared for me so tenderly for some time and with whom I am now boarding, her heirs and assigns forever, all the rest, residue and remainder of my estate real, personal and mixed, wherever situated and however and whenever acquired. . . ."

The will bears date May 6, 1932.

Myrtle Tucker was named sole executrix, and freed from bond in the trust.

When the will was written, the testator was aged seventy-six years. It is fairly inferable that he was a bachelor. He had, ever since babyhood, been nearly blind. He had lived with his mother until her death in January, 1908; after that, he had boarded for a short time with a Mr. Sprague; then he had gone to an aunt, with whom he made his home while she lived. After her decease, and until his own, on January 19, 1937, a period of five years and eleven

months, Mrs. Tucker, (now Farwell,) the beneficiary, cared for him, at an agreed weekly rate, which appears to have been punctually paid.

On December 9, 1931, a guardian was appointed for Mr. Glover. The proceeding was under a statute providing, in the case of an adult person of unsound mind, for such appointment. R. S., Chap. 80, Sec. 4. As used in the statute, the term "unsound mind" relates to the ability of the person to transact business; it is such debility or impairment of mentality as deprives the person affected of competency to manage his estate. "All persons, including those insane or of unsound mind, . . . who, by reason of infirmity or mental incapacity, are incompetent to manage their own estates, or to protect their rights" are the words of the statute. R. S., *supra*.

The fact of guardianship (such appointment having been, as here, on allegation and proof of unsound mind) raises the presumption that some degree or form of mental unsoundness afflicts the ward; but this is rebuttable. *Chandler Will Case*, 102 Me., 72, 66 A., 215.

It is convenient here to notice that, although a person of age does not have, as between living persons, the faculty to transact business, he may, nevertheless, have testamentary power. He may still be capable of making a will. The statute itself so recognizes. R. S. (*supra*) Sec. 29.

On call of the case, contestants' counsel moved, with respect to the questions of unsound mind, undue influence and fraud, the framing of jury issues. The motion, which averred no specific reason, was denied. Exception was allowed, if allowable.

There is no statute law, or constitutional provision, which gives an absolute right to trial by jury, in a probate appeal. It is true, the court may, by statute, make up issues of fact and refer them to a jury, but the parties have no right to demand the trial of any issue by a jury. R. S., Chap. 75, Sec. 36; *Bradstreet* v. *Bradstreet*, 64 Me., 204; *Randall, Appellant*, 99 Me., 396, 59 A., 552.

A jury, if called, serves only to advise; the court is not bound to defer to the judgment of the jurors. Should the judge, in the trial, need assistance as to facts, he may, in his discretion, submit issues to a jury, and obtain the findings of the panel. The verdict of the

jury on such an issue is advisory only. Such is the capacity in which a probate appeal jury functions. *Bradstreet* v. *Bradstreet*, supra; *Randall, Appellant*, supra.

Indeed, in probate, as in equity, (*Redman* v. *Hurley*, 89 Me., 428, 36 A., 906,) the court cannot, by means of a jury verdict, shift its own responsibility respecting the ascertainment, from a disputed factual situation, of the truth. A jury does not figure, ordinarily, in the trial of an admiralty suit. *United States* v. *La Vengeance*, 3 Dall., 297, 1 Law Ed., 610.

It was stressed in argument that discretion may be abused. The answer is that contention that this case was such as to require a jury, is futile. *Cogan* v. *Cogan*, 202 Mass., 58, 88 N. E., 662. No error has been committed.

Exceptions to rulings excluding evidence, and admitting evidence, detail whereof would promote no serviceable end, are not sustainable. Clearly, no ruling did prejudice to any legal right. *Neal* v. *Rendall*, 100 Me., 574, 62 A., 706; *Ross* v. *Reynolds*, 112 Me., 223, 91 A., 952.

This Court sits to determine whether or not there was sufficient evidence (any evidence is the common expression,) to justify the findings and decree of the appellate Probate Court.

The record contains substantial evidence, the effect of which was not counterbalanced, to support the conclusion of the court. There was, in the extended hearing, ample evidence to uphold the finding that, at the time of making his will, George Glover, the testator, had the privilege or right so to dispose of his property; that he was testable. Furthermore, that neither fraud, in the sense of deception, nor that species of constructive fraud called undue influence, was practiced to induce the testator to favor Myrtle Tucker over others; to persuade him to give her not only what might be remaining of his tangible things, but everything of an exchangeable value, every interest in any and every thing left that had been the subject of ownership by him — such fraud was not established.

The will, in the phrase of counsel, is the offspring of the untrammeled mind of the testator. His mind was one age had weakened somewhat, but it yet was, in a legal sense, a sound mind. R. S., Chap. 88, Sec. 1; *Hall* v. *Perry*, 87 Me., 569, 33 A., 160; *Randall,*

*Appellant,* supra. His mind was proven that of a man of human · frailties and imperfections, easy enough to see with retrospective eye; the mind of a man of intelligence, who, in willing his goods and possessions, understood the nature and ambulatory force of his act; there was abundant proof that he knew what he was doing, and did deliberately what he meant to do; he had capability to will.

There was nothing remarkable that Myrtle Tucker should be named devisee and legatee of the residuary estate (around $4000) of the testator. The court could rightfully have found from the testimony that she had, during those years which proved to be the testator's last, when his heirs and next of kin were seemingly manifesting no especial concern for his welfare, been considerate and helpful, to his satisfaction, and, for aught the transcript of the evidence discloses, to the approval of his guardian. The influence of kindness is not undue influence. *Barnes* v. *Barnes,* 66 Me., 286.

The procedure here, that of exceptions to the decree, is commended. *Martin, Appellant,* 133 Me., 422, 179 A., 655.

The motion, consideration of which has not been pressed, to avoid the verdict for transcending evidence, presents the appearance of precaution.

All exceptions are overruled; the motion is overruled.

*Exceptions overruled.*
*Motion overruled.*