JOSEPH O. BOLDUC

*vs.*

HENRY THERRIEN

York.   Opinion, August 27, 1951.

*Simon Spill*, for plaintiff.

*Francis J. LaFountain*, for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J.   This is an action of tort for deceit brought by plaintiff against the defendant to recover damages arising out of alleged misrepresentations in the purchase and sale of real estate.   The defendant filed a plea of general issue. It comes before us on exceptions by the plaintiff to the granting of a motion for a directed verdict for the defendant at the January 1951 Term of the York County Superior Court.   The bill of exceptions contained two exceptions but the only exception now pressed is the claim of the plaintiff that the court erred in directing a verdict for the defendant.

The declaration, omitting certain parts thereof, alleges that the defendant

> "did falsely and fraudulently represent to said plaintiff, a layman inexperienced in house construction and known to the defendant to be such, that said dwelling house was well built, that the cellar was dry, that the roof and foundation were built in best workmanship manner and best material, and that weather proof paper was used wherever necessary in said house; that the plaintiff relying upon said statements and representations of the defendant made to him, and believing each of them to be true, not knowing or having any reason to believe that they were in fact false and not true, was thereby induced to purchase the said house at said price as stated aforesaid; and the plaintiff further alleges that the said defendant, a building contractor, having built said house, knew or ought to have known that the statements made by him were not true as represented by him to said plaintiff in that the roof is without proper support, that said building does not have weather proof paper, that said foundation was not built in good workmanship manner and with best material, that the cement blocks and mortar are cracking, that the window casings and door casings were improperly installed, that the wood posts are sagging, and said house was not well built, all of such defects causing damage to the rest of the building, namely, floors, doors and other parts of the house being drawn out of line, said cellar was wet and otherwise defective, all of said defects were not apparent or subject to examination and due to faulty workmanship and insufficient and improper material, - - - -."

The facts, briefly, are that the plaintiff was interested in purchasing a house for himself and his grandchildren with whom he had been living. The defendant was a building contractor of considerable experience who in the course of his business was selling houses which he had built. The house in question was built by the defendant under his di-

rect personal supervision and finished in April, 1948. The plaintiff met the defendant on May 19, 1948, and together they examined the house in question. The plaintiff became interested in the house but the price was too high and after further negotiations the defendant agreed to sell the house to the plaintiff for $8,000, and plaintiff made a down payment of $2,000. A few days later a deed from the defendant to the plaintiff was made, executed and delivered to the plaintiff.

The alleged misrepresentations which are the basis of this action arise out of conversations between the plaintiff and defendant at the time the premises in question were examined. The plaintiff informed the defendant that he knew nothing about house construction and that he would have to rely entirely upon the defendant for information. In the course of the examination of the house the plaintiff learned from the defendant that it was a one story house with an unfinished attic which the plaintiff did not see, being informed by the defendant that it was not necessary for him to see it as it was unfinished with no floor, and, upon further inquiry by the plaintiff with respect to the trap door leading to the open attic, the defendant said in substance— you are buying just a one story house and you do not need to worry about the roof. You have no business there. You can't put anything there; there is no floor or nothing. It developed at the time of the examination that there was considerable water in the cellar which the defendant explained by saying that it had been raining pretty hard for a couple of months. The plaintiff was told and he saw that there was an electric pump installed in the cellar for the purpose of pumping out the water. He also received the information that the foundation was cement blocks with the statement by the defendant in substance that he (the defendant) built all his houses with cement blocks and that they were satisfactory. The plaintiff stated to the defendant that he expected to have something good and the

defendant stated that this house has paper under the shingles and the roof is new and I built it and when I say I built something it is built. Defendant further stated that the house was insulated all around, including good nice paper under the clapboards. The evidence on the part of the plaintiff discloses that the plaintiff informed the defendant that he was trusting the defendant because of his lack of knowledge and the defendant replied to the effect that when he (the defendant) said something he said it and that it (the house) is built and it is right. After the deed was delivered plaintiff went into possession of the premises, the water disappeared and everything, according to the record, seemed to be in order, but late in the Fall of 1948 water again began to appear in the cellar and the plaintiff noticed wet spots on the ceiling of his bedroom. Plaintiff also noticed that the floors had begun to sag and that the doors would not close and windows would not shut properly. Plaintiff complained to the defendant but defendant informed him that when a house is sold and paid for he (the defendant) was all done. Shortly thereafter plaintiff called a mason who made an examination of the cellar and reported that he could improve it by installing a drain around the inside of the cellar which he subsequently did. Then the plaintiff called a carpenter or contractor when he found the ceiling in his bedroom was wet and the record discloses that the carpenter not only made an examination of the roof by removing a number of shingles but that he also made an examination of the unfinished attic in the presence of the plaintiff. The record shows that on one side of the roof there was no insulation, either felt or paper, under the shingles—at least under the shingles that were removed by the carpenter. Plaintiff also called another contractor who made an examination of the premises and in addition to testifying with respect to the faulty construction of the cellar and foundation he testified with respect to the construction of the roof. His testimony in substance was to

the effect that he found upon examination that the only support which the roof had were the rafters bearing from the outside walls on both sides of the house; that there were no collar beams which are customarily placed on each rafter about six feet or thereabouts above the wall plate crossing over from one rafter on one side of the roof to its mate on the other side of the roof; that there was a total absence of a ridge pole prop which is usually placed, according to the witness, about every third rafter to strengthen the roof.   There was also further evidence of the faulty construction of the cellar floor, walls and foundation which appeared to be cracked in many places so that water easily oozed through into the cellar.

The essential elements of an action for deceit have been so often and so recently stated by this court that it is unnecessary to reiterate them.   See *Shine* v. *Dodge,* 130 Me. 440, 443; also *Coffin* v. *Dodge,* 146 Me. 3, 76 A. (2nd) 541, 543.   The question of whether a false representation is material is a question of law.   *Caswell* v. *Hunton,* 87 Me. 277, 32 A. 899.   Deceit imports a false and fraudulent representation, which must not only influence the buyer's judgment in making the purchase but also must relate to a fact which directly affects the value of the property sold.   See *Shine* v. *Dodge, supra.*   We said in *Shine* v. *Dodge, supra,* Page 444:

> "The line between what is a statement of fact and of opinion is often shadowy. - - - - - But the precise form of the language is not always the controlling factor.   The relationship of the parties or the opportunity afforded for investigation and the reliance, which one is thereby justified in placing on the statement of the other, may transform into an averment of fact that which under ordinary circumstances would be merely an expression of opinion. - - - - - - - - - In construing what is in this respect the true meaning of the language used, it is often necessary to consider the subject matter and the surrounding circumstances, and

> it may be proper to leave the determination of this issue to the jury under proper instructions of the court." (See cases cited)

In our opinion there are certain representations in the declaration which are material although some may be expressions of opinion but it should be remembered that the defendant had been informed of the lack of knowledge of the plaintiff with respect to house construction and the defendant also knew or had been told by the plaintiff that he (the said plaintiff) was relying solely upon the defendant for information concerning the house under consideration. The plaintiff and his witnesses by their testimony pictured a set of facts some of which were material and a great many of the representations testified to by the plaintiff and his witnesses are hardly uncontradicted by the defendant other than to claim that they were trade talk or mere expressions of opinion. It certainly cannot be said that the defendant's representations of the presence of the insulation on the house and roof was a matter of opinion. Neither can the faulty construction of the roof and foundation as testified to by plaintiff's witnesses under the circumstances existing in this case be termed trade talk. There was evidence by the plaintiff and his witnesses which if believed and viewed in the light most favorable to the plaintiff under proper instructions of the applicable rules of law was for the jury. The applicable principles of law relating to the propriety of granting directed verdicts have been many times announced by our court, but it will do no harm to repeat them. We said in *Kimball* v. *Cummings,* 144 Me. 331, 68 A. (2nd) 625, 627, quoting from *Barrett* v. *Greenall,* 139 Me. 75, 80, 27 A. (2nd) 599, 601:

> "The principle of law which controls the action of this court, when exceptions are presented to test the propriety of a nonsuit or a directed verdict for the defendant in the trial court, is to determine only whether upon the evidence under proper rules of law 'the jury could properly have found for the

plaintiff', Johnson et al v. New York, New Haven and Hartford Railroad et al, 111 Me. 263, 88 A. 988, 989; and in determining that issue, the evidence must be considered in that light which is most favorable to the plaintiff, Shackford v. New England Telephone & Telegraph Co., 112 Me. 204, 91 A. 931. The issue here is not whether the evidence adduced is sufficient to establish the controverted facts, but whether or not it has a tendency to establish those facts, and if this is so, although 'it may not be strong in its support, and the Judge may well apprehend, that the jury will find it insufficient', the court has no 'right to weigh it, and determine its insufficiency as matter of law.' Sawyer v. Nichols, 40 Me 212. It is the province of the jury, and not of the justice presiding in the trial court, to judge of the testimony of the witnesses appearing in the cause and to weigh their evidence. Sweetser v. Lowell et al., 33 Me. 446; Blackington v. Sumner et al., 69 Me. 136. The credit to which the testimony of a witness is entitled is entirely a question of fact for decision by the jury. Parsons v. Huff, 41 Me. 410."

Applying the principles of law set forth in the above cited cases to the instant case it is the opinion of this court that it was reversible error to direct a verdict for the defendant. The mandate will be

*Exceptions sustained.*