84 A.2d 808 (1951)
In re HALEY'S ESTATE.
Appeal of CROCKETT.
Supreme Judicial Court of Maine.
November 27, 1951.
*809 Titcomb & Siddall, Sanford, for appellant.
Arthur A. Greene, North Conway, N. H., for legatees.
Lausier & Donahue, Biddeford, for Winn E. Broughton, sole heir at law.
Before MURCHIE, C. J., and THAXTER, FELLOWS, MERRILL, NULTY and WILLIAMSON, JJ.
MERRILL, Justice.
On exceptions. Sumner O. Haley, a resident of York County, died June 8, 1950, leaving an instrument purporting to be his last will and testament. By this will he disposed of an estate amounting to some $96,000. His sole heir was a first cousin, Winn Broughton, otherwise known as Winn E. Broughton. By the will he left him a token bequest of $100. He also left the sum of $500 to Flora D. Palmer, who had been his housekeeper for some forty-eight years. He divided the residue into six equal shares, one of which he gave either to the child or the children of each of six named deceased *810 first cousins. Of these second cousins nine were residents of the Conways in New Hampshire. On June 27, 1950, Pliny Crockett, a beneficiary and the executor named in the will, presented the same for allowance to the Probate Court for York County.
The docket of the Probate Court shows that on July 14, 1950 "Winn Broughton" appeared by William P. Donahue. Said docket also shows that on November 2, 1950 Arthur A. Greene of North Conway, New Hampshire, appeared "for thirteen different heirs at law". In passing it may be noted that Winn Broughton was the sole heir at law of the deceased; that the probate docket does not disclose the names of those for whom Arthur A. Greene appeared; and that William P. Donahue, by whom Broughton appeared before the Judge of Probate, is an attorney at law residing in this State. On November 14th the Judge of Probate disallowed the will.
Within the time allowed by law, to wit, on November 29, 1950, Pliny Crockett, in his individual capacity and as the executor named in the will, filed his appeal and reasons of appeal in the Probate Court. The "appeal and reasons of appeal" were dated November 20, 1950. The appeal and reasons of appeal bear an endorsement dated November 29, 1950 signed by the Judge of Probate ordering them filed. On the same date, November 29, 1950, Crockett filed an appeal bond. This bond was dated November 24, 1950 and refers to the appeal to which it is applicable as claimed November 20, 1950. This appeal bond bears an endorsement dated November 29th, "examined and approved", signed by the Judge of Probate. There is no evidence in the case which indicates any action with respect to the time of taking and claiming the appeal except as aforesaid. Within the time prescribed by R.S. Chap. 140, Sec. 33, the appellant caused a copy of the reasons of appeal, attested by the Register, to be served upon William P. Donahue, the resident attorney by whom Winn Broughton appeared before the Judge of Probate. Within the time prescribed by said statute for service of the reasons of appeal, Arthur A. Greene accepted service for those for whom he had appeared in the Probate Court.
In the Supreme Court of Probate the contestant, Broughton, moved to dismiss the appeal on the grounds that service was not made as required by Sec. 33, supra, and that the bond did not comply with statutory requirements. To the denial of this motion he took exceptions. He also took exceptions to rulings on the admissibility of evidence made by the Justice of the Supreme Court of Probate during the trial. He also took exceptions to the final decree of said Justice allowing the will, on the grounds that there was no evidence from which it could be found that the will was executed according to law, or that Sumner O. Haley at the time of the executing of the same was of sound mind, and that all of the evidence in the case required a finding as a matter of law that the execution of the will was obtained by undue influence. It is upon these exceptions, they having been presented and allowed, that the case is now before this Court.
The exceptions to the denial of the motion to dismiss the appeal must be overruled. The statute, R.S. Chap. 140, Sec. 33, requires that service of the reasons of appeal be made upon "all the parties who appeared before the judge of probate on the case that have entered or caused to be entered their appearance in the docket of said court." Service is not required to be made on any other persons than those specified in the statute. Nor are any other persons than those specified in the statute entitled to have service made upon them.
The purpose of limiting the persons upon whom service of reasons of appeal must be made to those who "appeared before the judge of probate on the case that have entered or caused to be entered their appearance in the docket of said court," is to give the appellant definite record information of those upon whom the reasons of appeal must be served. The only person who appeared before the Judge of Probate "on the case" and whose appearance had been entered on the docket within the meaning of Sec. 33, supra, was Winn Broughton. The appearance of Arthur A. Greene for thirteen unnamed heirs did not sufficiently identify the persons for whom *811 he entered an appearance so that the appellant had notice of their identity to enable him to make service upon them. They neither entered nor caused to be entered their appearance upon the docket of the Probate Court within the meaning of Sec. 33, supra. The appellant was not required to make service of the "reasons of appeal" upon them or either of them. This being true, the question of the sufficiency of the acceptance of service for them by their attorney becomes immaterial.
The other suggested ground for dismissing the appeal is that the bond is defective as an appeal bond. The claimed defect is that the bond is dated November 24, 1950 and refers to the appeal as having been claimed on November 20, when in fact the appeal was not claimed or taken until November 29, the date "the appeal and reasons of appeal" were filed in the Probate Court.
The filing of the bond required by Sec. 33 of Chap. 140 of the Revised Statutes is an essential jurisdictional requirement, without which a probate appeal cannot be perfected. Appeal of Bartlett, 82 Me. 210, 19 A. 170. In the instant case although in strictness the appeal was not claimed until November 29, the date when the "appeal and reasons of appeal" were filed in the Probate Court, these papers were dated November 20. Although the bond was dated November 24, it was not presented to the Probate Court until November 29, and then simultaneously with the aforesaid appeal and reasons of appeal. The fact that the bond refers to the appeal as having been claimed on the date of the papers, November 20, instead of on November 29, the date it was filed in court, does not vitiate the bond. There can be no doubt as to the identity of the appeal to which this bond refers. It sufficiently identifies the proceeding in which it is filed, and to which it relates. The fact that the bond bears a date prior to the date of filing the appeal is also immaterial. It was made and dated subsequent to the making of the appeal papers, and it took effect not from the date which it bears upon its face but from the date on which it was delivered, to wit, filed in the Probate Court and approved by the Judge thereof. This bond could be enforced with respect to this appeal. It was and is a sufficient bond under the statute.
The right of appeal in probate matters is conditional. It can be presented only upon complying with the requisites of the statute relating to such appeal. Appeal of Bartlett, supra. Among these prerequisites are the filing of an appeal bond and service of the reasons of appeal as required by Sec. 33, supra. Appeal of Bartlett, supra, Nichols v. Leavitt's Estate, 118 Me. 464, 109 A. 6. In this case because the bond filed meets the statutory requirements, and because the reasons of appeal were served within the time and upon the persons prescribed by statute, the exceptions to the refusal to grant the motion to dismiss the appeal must be overruled.
With respect to the exceptions taken to rulings of the Justice of the Supreme Court of Probate upon the admissibility of evidence, we will say as we did in Appeal of Heath, 146 Me. 229, 236, 79 A.2d 810, there quoting Chief Justice Dunn in Appeal of Eastman, 135 Me. 233, 194 A. 586, 588, they are "Exceptions to rulings excluding evidence, and admitting evidence, detail whereof would promote no serviceable end (and they), are not sustainable. Clearly, no ruling did prejudice to any legal right. Neal v. Rendall, 100 Me. 574, 62 A. 706; Ross v. Reynolds, 112 Me. 223, 91 A. 952."
This brings us to an examination of the exceptions to the decree of the Justice of the Supreme Court of Probate allowing the will. In the very recent case of Appeal of Heath, supra, we held that the validity of the decree of the Supreme Court of Probate can be challenged before this Court only by exceptions; and that the findings of the Justice of said Court in matters of fact are conclusive if there is any evidence to support them. In that decision we reviewed the authorities supporting these rules and to do so again would be superfluous.
The Justice of the Supreme Court of Probate made the following findings: "The evidence, offered by the contesting parties, consisting in part of the testimony of the three attesting witnesses, conclusively *812 proves that said decedent on the First day of August 1949 was possessed of testimentary capacity and legally qualified and competent to make and execute his Last Will and Testament, that the same was legally executed, and that there was no undue influence exercised upon him; that the Executor named in said instrument has sufficient business experience to qualify him for said office; that said instrument offered for probate is the duly executed Last Will and Testament of the said Sumner O. Haley and is entitled to probate as such." Unless the foregoing findings of fact or some of them were made by the presiding Justice without any evidence to support them, such findings do not constitute error in law and the exceptions thereto must be overruled.
On the question of testamentary capacity it is well settled in this State that "The burden rests upon the proponents to affirmatively prove it. In probating a will the sanity of the testator must be proved, and it is not to be presumed. These principles are too well established in this state to require citation. But the word `sanity' is used in its legal, and not its medical, sense." Chandler Will Case, 102 Me. 72, 87, 66 A. 215, 221. In that same case on page 89 of 102 Me., on page 221 of 66 A. we stated: "Our court have also said in Appeal of Randall & Randall, 99 Me. [396] 398, 59 Atl. [552] 553: `If the testator possesses so much mind and memory as enables him to transact common and simple kinds of business with that intelligence which belongs to the weakest class of sound minds, and can recall the general nature, condition, and extent of his property, and his relations to those to whom he gives, and also to those from whom he excludes, his bounty, it is sufficient.'" Measured by this test there was evidence from which the court could have found that the testator in this case possessed the required testamentary capacity. A review of the testimony would serve no useful purpose.
In the same case, Chandler Will Case, supra, 102 Me. at page 117, 66 A. at page 233, we said: "The burden of proof rests upon the contestants to sustain the allegation of undue influence by a preponderance of the evidence." See In re Mitchell, (In re Will of Loomis), 133 Me. 81, 174 A. 38. Unless the evidence of undue influence in this case was so overwhelming that a finding by the Justice of the Supreme Court of Probate that the contestant had not maintained the aforesaid burden of proof was legal error, the exception to the decree on this ground must be overruled.
From the earliest days in this State it has been recognized that undue influence exerted upon the testator will vitiate a will. Small v. Small, 4 Me. 220. In Barnes v. Barnes, 66 Me. 286, 297 we said: "The influence must amount either to deception or else to force and coercion, in either case destroying free agency."
The case of Appeal of O'Brien, 100 Me. 156, especially on pages 158 and 159, 60 A. 880, and Appeal of Rogers, 123 Me. 459, 461, 123 A. 634, 636, contain excellent and full discussions of what is meant by undue influence. In the latter case we said:
"By undue influence in this class of cases is meant influence in connection with the execution of the will and operating at the time the will is made, (emphasis ours) amounting to moral coercion, destroying free agency, or importunity which could not be resisted, so that the testator, unable to withstand the influence, or too weak to resist it, was constrained to do that which was not his actual will but against it.
"Undue influence often closely resembles and is near akin to actual fraud. But strictly speaking it is not synonomous with fraud. In the making of a will, undue influence is exerted where the mind of the nominal maker of the document, in yielding to the dominancy and supervision of another's designing mind, does what otherwise the ostensible actor would not have done."
As said in the comparatively recent decision In re Will of Cox, 139 Me., 261, at page 272, 29 A.2d 281, 286: "The true test is the effect on the testator's volition. It must be sufficient to overcome free agency, so that what is done is not according to the wish and judgment of the testator."
*813 If the instrument as finally executed expresses the will, wish and desires of the testator, the will is not void because of undue influence. This is illustrated by the decision of Struth v. Decker, 100 Md. 368, 59 A. 727, 730, where the court said in language particularly applicable to the case now before us: "There was a mass of testimony tending to show that, but for the zeal of Mrs. Frackman, the mother-in-law of Charles G. Struth, and his subservience to her urgency, no will would have been made; but it would serve no useful purpose to detail the testimony upon this point, because the influence which is exerted merely to induce the making of a will, while leaving the testator free from influence as to the provisions of the will, is not undue influence in the legal sense." (Emphasis ours.)
Although in the instant case there was evidence that pressure was brought to bear upon the decedent to induce him to make a will, there was evidence from which it could well be found that once the decedent was induced to make the will, the will which he did make and which is the subject-matter of this controversy, expressed his own will, wishes and desires.
The will was drawn by a member of the Bar who was recommended by and sent to the testator by the appellant, Pliny Crockett. This person, Fred W. Small, an attorney of thirty-five years' experience and practice, and a resident of Gorham, Maine, testified that he first saw the testator at the Buxton-Hollis Hospital on the Saturday before the will was executed on the following Monday, August 1, 1949. Mr. Small testified:
"I talked with him in regard to making his will and what he wanted to do about his relatives, had quite an extensive conversation with him on the 30th, and he told me about his various relatives, and at first he didn't know how he was going to be able to make a will because he had some timberland that people had told him was worth a great deal more than he had any idea and he didn't know just how he was going to be able to make provisions in his will, and I told him he didn't have to make special money bequests, he could make division in fractional shares if he wanted to, and that seemed to appeal to him as being what he wanted to do, and I went over mostly on the 30th his relations. He did most of the talking and I had to listen because he was quite a talker and he gave me quite a history of the family and who his relatives were, and some of them he talked quite extensively about. * * *
"He talked quite a lot about Winn Broughton. He seemed to think a lot of him, but he said that Winn was well off and he didn't need the money and he wanted to give him one hundred dollars. * * *
"He apparently had seen him (Broughton) previously and in the years past because he thought a great deal of Winn Broughton, said he had some patents that he had realized money from and he had been a successful man and his other relatives needed the money more than he did and he wanted to give Winn a hundred dollars, and he talked about the other provisions of the will. * * *
"Well, he wanted to give his housekeeper five hundred dollars. Those were the only two pecuniary bequests he wanted to make; and then his other relatives had been  they were not, apparently, very well off, from what he said, and that his sister had left some money in trust and some of the relatives were to receive an annuity payment. I think the relatives, some of the relatives on his father's side  were to receive certain payments from an annuity which his sister had left, and that he had an understanding with his sister that he was to take care of the Conway cousins and that she had provided for the others; and he said he wanted to divide it among the second cousins according to the way the will reads. I wouldn't know off-hand just who they were, without referring to it. * * *
"He said his housekeeper had worked, I believe he said she had worked for him for forty-eight years the 6th day of April previous to that time, and he had paid her. He didn't say how much he had paid her, and on several occasions I referred to the housekeeper, asked if that was all he wanted to give, and he was definite that five hundred *814 dollars was what he wanted to give her. * * *
"I went back home. I went there with the intentions of getting the data to draw the will and then going back to my office and preparing it, but I didn't get through with him that day, or that afternoon. * *
"I returned the next Monday, that is the first day of August, and at that time I brought my typewriter with me to type the will there at the hospital. * * *
"Well, the Saturday he talked about his relatives and things which were really not material as far as I was concerned, but he was an old man and he wanted to talk and I couldn't break into his conversation and he didn't get down to making the final provisions that day, and I had to go back."
Mr. Small testified that the decedent knew the names of his six deceased cousins but was not in all cases sure of the names of their children; and that he gave him directions to draw the will making the division into sixths and disposing of those sixths in the manner set forth in the will. There was no one present in the room with Mr. Small and the decedent when the provisions of the will were being discussed.
If this testimony was entitled to credence and was believed by the Justice of the Supreme Court of Probate he was well justified in finding that the will was not produced by undue influence, and that notwithstanding the fact that more or less pressure had been exerted upon the testator to induce him to make a will, the will which he finally did make expressed his own true wishes and desires. We can say of the testimony of Mr. Small as did the Maryland Court of the attorney who drew the will involved in the case of Struth v. Decker, supra: "but we must remember that he is under the double obligation of an officer of the court, as an attorney, and as a witness sworn in the case, and effect must be given to his testimony accordingly, unless it is discredited according to the rules of evidence."
The evidence in the record did not discredit nor did it require the Justice of the Supreme Court of Probate to disregard the foregoing testimony of Mr. Small; nor did it compel a finding by the Justice that it was other than in strict accordance with the truth. Winn Broughton, the contestant, did not sustain the burden resting upon him to establish undue influence in this case. The decree by the Justice of the Supreme Court of Probate sustaining the will is not erroneous in law. The entry must be exceptions overruled.
Exceptions overruled.