MELVIN W. BECK, SIMEAR SAWYER & FRED HAIGHT
*vs.*
RICHARD SAMPSON AND MARY SAMPSON

Kennebec.    December 26, 1962.

*Jerome G. Daviau,* for the Plaintiffs.

*Richard J. Dubord,*
*Donald E. Eames,* for the Defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ. DUBORD, J., did not sit.

SULLIVAN, J. Plaintiffs, Beck and Haight, are registered, professional engineers. R. S. (1954), c. 83, as amended. Plaintiff, Sawyer, is a registered architect. R. S., c. 81, as amended. The plaintiffs sued these defendants to obtain payment for the engineering and architectural design of a new residence for the latter. At a trial by jury plaintiffs were awarded a verdict and the defendants appealed.

Defendants' points of appeal include exceptions to the admission of certain testimony, to the denial of a motion for severance of the claims of the plaintiffs, to the refusal of requested jury instructions and to the denial of motions for a new trial and for judgment notwithstanding the verdict.

The plaintiffs' short and plain statement of their claim for relief reads essentially as follows:

> "Melvin W. Beck and Fred Haight - - - - - both being registered engineers under the Laws of Maine and Simear Sawyer - - - - - being a registered architect under the Laws of Maine, the three said plaintiffs doing business under the name and style of Melvin W. Beck & Associates claim that the defendants owe them the sum of $37,133.12. For engineering and architectural design on proposed residence of defendants: - - - "

There is contained in the record of this case acceptable and believable evidence to furnish and warrant this subjoined narration. Beck, an engineer, was in early January of 1960 employed by the defendants to plan and design a pretentious residence for them upon their vacant land. Beck engaged both Sawyer (January 30, 1960) and Haight (late 1960) to collaborate with him because of the magnitude, distinctiveness and complication of the task. Beck and his employees did some preliminary work which was corrected by Sawyer. The commission was an overlapping of engineering and architecture. Neither Haight nor Saw-

yer had been associated with Beck as partner. Neither Haight nor Sawyer at any time entered into direct communication or confrontation with either defendant. Haight contributed some 200 hours (@ $7.50 — $1500) of personal services applied to plumbing, ventilating and heating aspects. The defendants were advised by Beck of the latter's enlistment of Haight's professional aid and approved. Sawyer at the invitation of Beck participated as architect and in conjunction with Haight and Beck devoted some 373 hours of his professional efforts to the undertaking over a span of some 10 months. Beck several times told Richard Sampson of Sawyer's professional association with Beck. Mary Sampson was once informed by Beck that the latter purposed to take the plans to Sawyer at Bangor. The work done by Beck in connection with the plans was not architectural. Sawyer scrutinized, developed and revised the preliminary plans and approved so much of the sustained work as had attained accuracy and completion. The architectural features of the enterprise were under Sawyer's supervision. He stamped his professional seal upon drawings he adjudged to be in a finished state, to certify that such had been prepared by or under his direct supervision. R. S., c. 81, § 14. Beck took 3 separate sets of plans and designs to the defendants through a period of several months. Some of the sheets bore the seal of Sawyer and all drawings and the photo copies thereof carried the legend, *"Melvin W. Beck and Associates, Engineers and Architects, Waterville, Maine."* The defendants in 3 instalments paid Beck a total of $11,000 on account. Upon receipt of the 3rd set of plans in February or March, 1961 the defendants elected to discontinue the transaction. Plaintiffs thereupon sued. The planning and designing had been some 75% to 85% completed at the termination of the employment and there had been no occasion to supervise any building construction. 7% of an estimated cost of construction was a fair rate of compensation and had been set by agree-

ment of Beck with Richard Sampson. The projected dwelling bade fair to cost some $1,200,000. With allowances for the obviated supervisory building charges and for unfinished planning together with due credit for $11,000 paid to Beck, Plaintiffs demanded $37,133.12. The jury assessed the damages as $30,562.10.

Defendants had unsuccessfully moved that the court drop Haight and Sawyer as parties plaintiff or that the court in the alternative sever the claim of each plaintiff from those of the other plaintiffs for the reasons that no plaintiff claim was common with the claim of either of the other plaintiffs, that no privity of contract existed between either Haight or Sawyer and the defendants and that with the other plaintiffs neither Haight nor Sawyer enjoyed any legal relation justifying a joinder as party plaintiff. The presiding justice was within sound discretionary bounds in denying such motions, Rule 20, M. R. C. P. 155 Me. 510.

Defendants with adverse results filed a motion for a directed verdict at the close of all the evidence, a later motion for judgment notwithstanding the verdict and a motion for a new trial. The reasons asserted for all such motions cumulatively are aggregated as follows:

"1.    The evidence is insufficient to warrant a verdict for the plaintiffs;

2.    The evidence shows that plaintiff Melvin W. Beck was the only plaintiff having contractual relations with defendants; that said Beck was not a duly licensed architect; that the services rendered by said Beck were architectural; and that the contract was therefore illegal and void; and said Beck is not entitled to recover for services rendered;

3.    That the services rendered by plaintiffs Simear Sawyer and Fred Haight were without contractual relations, express or implied, with defendants, and they are therefore not entitled to recover herein;

4. The evidence shows that any consideration paid by defendants to plaintiff Melvin W. Beck was in pursuance of an illegal and void contract and defendants are therefore entitled to recover the same as prayed for in their counterclaim;

5. The damages are excessive;

6. The verdict is contrary to the evidence;

7. The verdict is contrary to the weight of the evidence;

8. The evidence is insufficient to warrant a verdict for the plaintiffs; and

9. The damages are not supported by the evidence and are clearly the result of a compromise on the part of the jury."

Upon the defendants' motions the defendants must sustain the onus.

"In the instant case the burden of proving to the satisfaction of the court that the verdict was manifestly wrong is upon the one seeking to set it aside - - - - The credit of the testimony of the witnesses of the plaintiff was for the jury and not for the court to decide - - - - "

*Witham* v. *Quigg,* 146 Me. 98, 103.

There was sufficient evidence to justify the jury in concluding that plaintiff Beck contracted with the defendants either at a fixed rate of compensation or for the fair worth of his services. There was testimony that all plaintiffs became actively associated in the transaction and that the defendants knew or ought to have understood that truth. *Gordon* v. *Keene,* 118 Me. 269, 270; *Wadleigh* v. *Pulp & Paper Co.,* 116 Me. 107, 113.

Sawyer alone of the plaintiffs was a registered architect. Whether the commission to the plaintiffs was preponderantly or incidentally architectural, nevertheless the

jury were possessed of credible evidence that Sawyer accepted responsibility and did supervise the architectural features of the work. R. S., c. 81, as amended, an exercise of police power, regulates the practice of architecture in the interest of public life, health and property and requires that precedent to practicing such an accomplished profession one schooled in architecture first vindicate his competency in an official test. The act proscribes the practice of the architectural skills by an unregistered practitioner.

" - - - - in person or as the directing head of an office or organization performing them" R. S. c. 81, § 8.

The jury were sufficiently fortified by credible evidence in deciding that the mischief which the legislative enactment, R. S., c. 81, as amended, sought to remedy had in the instant case been allayed by the participation of the plaintiff Sawyer, registered architect, as the supervisor of the architectural features in the planning and designing of the projected Sampson residence. There was evidence to sustain a finding that Sawyer functioned as an autonomous professional associate and not as an employee or subaltern of Beck and that Beck's services upon the plans were not architectural. There was testimony that the work done was by classification and inextricably both architectural and engineering. R. S., c. 81, as amended, does not prohibit a full allocation of architectural features of a building to a registered architect and the assignment contemporaneously of engineering details as such to a registered engineer in collaboration.

As for reasons 1 and 4 through 9 assigned by these defendants in support of their 3 motions, *supra,* our review of evidenced facts earlier in this opinion will serve to establish the jury verdict as unassailable and manifestly within the jury province.

" ' - - - - To grant the motion would be to substitute the judgment of the court for that of the jury, as

to pure questions of fact about which intelligent
and conscientious men might have different views.
This the court will not do.' "

*Somerville* v. *Smithfield,* 126 Me. 511, 520.

" - - - - No citation of authorities is needed to
establish the proposition that when two arguable
theories are presented, both sustained by evidence,
and one is reflected in a jury verdict, the Court is
without authority to act. It is only when a verdict
is plainly without support that a new trial on gen-
eral motion may be ordered."

*Mizula* v. *Sawyer,* 130 Me. 428, 430.
*Jenness* v. *Park,* 145 Me. 402, 403.

Plaintiffs' exhibits 24 and 25 are artistic photographs of
a modernized Pompeian bathroom and appear to have been
cut from a magazine. The exhibits were admitted over de-
fendants' objection. Defendants contend that these ex-
hibits were "irrelevant and immaterial and not connected
to previous testimony." Beck testified that the pictures had
been given to him by Mary Sampson "as her general idea,
general thinking and we didn't get it exactly but as near
as we could incorporate." Beck related that Mrs. Sampson
specified marble "and a recessed tub with a niche behind
the tub - - - - As the finished drawing will show you, the
bath tub is more or less but not exactly, duplicated in every
detail, but nearly the same. We have a supporting column
and an 18 inch niche or shelf which corresponds. The floor
plan is circular but we have a more or less octagon effect.
The idea is much the same. We have a tub and shower,
lavatory, and the same number of fixtures, etc. have been
incorporated in the plan. - - - - The plan which has been in
existence six months specifies marble." Beck's testimony
was that the plans had been made at the request of the de-
fendants and according to their wishes and instructions.
Much of Mrs. Sampson's testimony asserted that Beck re-

fused or failed to heed her desires or tastes. The exhibits were properly admitted in evidence.

Plaintiffs' exhibits 28 and 29, each a glazed photograph of a different nude bronze fountain statue, were admitted over defendants' objection. On the back of both of the exhibits was typewriting - - - - on one, "Bronze Figure by HARRIET FRISHMUTH 'PLAYDAYS' PRICE $3,000.00 54″ tall Base - - 16″ - - - on the other, " 'SWEET GRAPES' Bronze figure by Harriet Frishmuth $3,000.00 Height— 4′7″ Base - - 12″ diameter." Defendants maintain that these exhibits were not material, do not appear to be part of the subject matter of the case and each bore on its reverse side extraneous writing which was hearsay. Beck stated that the exhibits with the typewriting had been in the possession of the defendants for 2 or 3 weeks and that the typewriting was data placed upon the pictures by the dealer. Beck drew such a statue on the elevation for a fountain and incorporated his drawing in the plans which he gave to the defendants who made no consequential objection. The price information contained upon these 2 exhibits is doubtlessly the occasion of the protest from the defendants. We do not believe that the exhibits were of a seriously prejudicial nature.

Plaintiff Beck had testified under cross examination that the firm of Stewart and Williams had, at Richard Sampsons's request, sent its representative to Beck's office sometime in March, 1960 to examine the building plans. Plaintiffs' counsel in redirect examination inquired of Beck if March was the correct month. Over defendants' objection that plaintiffs' counsel was thus endeavoring to impeach his own witness Beck was permitted by the court to state that Beck had mistakenly named the month. There was no reversible error.

" - - - - The rule restated in *State v. Sanborn*, 120 Maine, 170, is applicable in the instant case, 'that

> he who calls a witness may not by general evidence impeach his competency or credibility, if his testimony be disappointing. But this rule never contemplated that the truth should be shut out and justice prevented. *It does not prevent the showing* by other witnesses, or *by the direct or redirect examination, that the facts are otherwise than the witness testified to.* There is no principle of law or of justice which prevents one from availing himself of the truth of his case, although the credit of his own witness may thereby be impeached' - - - - " (Italics supplied.)

*Hartford Ins. Co.* v. *Stevens,* 123 Me. 368, 375.

The presiding justice declined the request of the defendants to instruct the jury as follows:

> "The jury is instructed that if you find from the evidence that the plaintiffs or any of them misrepresented the anticipated cost of construction of the proposed dwelling, whether through fraud, carelessness, ignorance or gross inattention, plaintiffs are not entitled to recover any fees."

The refusal of the instruction was not error. Fraud is an affirmative defense with a strict burden of proof. *Maxwell* v. *Adams,* 130 Me. 230, 233, M. R. C. P. Rule 8c, 155 Me. 495, Maine Civil Practice, Field and McKusick, P. 135, § 8.15. In a pleading of fraud the circumstances constituting fraud must be stated with particularity. M. R. C. P., Rule 9b; Field and McKusick, P. 145, § 9.2. Defendants here did not plead fraud and the pre-trial order does not mention such a defense. Nor was the pre-trial order modified at the trial and it supersedes pleadings. M. R. C. P., Rule 16, 155 Me. 507, Field and McKusick, P. 203, § 16.2. As for fraud, carelessness, ignorance and gross inattention the necessary element of reliance upon them or any of them by the defendants is not contained in the instruction asked. *Lane* v. *Harmony,* 112 Me. 25, 32.

Defendants were also denied two instructions worded as follows:

"The jury is instructed that if you find that the services rendered by plaintiff Beck were architectural services not merely incidental to engineering services, and were rendered by Beck without his having the license required by law, plaintiffs are not entitled to recover any fees."

"Defendants request that the jury be instructed that if they find from the evidence presented in this case that the plaintiff Beck planned and presented sketches and complete details for the erection of a building for the use of the contractor or builder when expert knowledge and skill were required in such preparation, then he was primarily performing architectural services."

These two requested instructions are not more favorable to the defendants than the instruction delivered to the jury by the court. The jury were informed:

"If, - - - - -, you find that the principal, primary service rendered was architecture and that engineering was incidental, under the statute the plaintiff is not permitted to recover under any type of contract. I repeat again, to this point the rights of Mr. Haight and Mr. Sawyer will be governed by Mr. Beck's rights."

There was no error in the refusal of the two instructions sought and negatived.

The mandate shall be:

*Appeal denied.*

*Judgment for plaintiffs.*