Evelyn CYR, Edmond H. Parent, Lillian Ayotte, and Lorraine Gilmore

v.

Richard G. COTE, Aurore Cote, and Mary A. Bowie.

Supreme Judicial Court of Maine.

Jan. 26, 1979.

Rocheleau & Fournier by Ronald P. Lebel, Lewiston (orally), for plaintiffs.

Isaacson & Isaacson by Philip M. Isaacson, Lewiston (orally), for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

Suffering from congestive heart failure and related illnesses Willie Parent was admitted to Central Maine Medical Center on July 7, 1975. While hospitalized on July 14, Mr. Parent, by warranty deed, conveyed his only real estate to the defendants-appellees, Aurore and Richard Cote, his daughter and son-in-law.[1] On the same date, he also assigned a savings account of approximately $3,000 to his defendant daughter, Aurore. Parent died on July 18, 1975. His will dated June 19, 1975, which was admitted to probate, essentially divided his entire estate (including savings account and real estate) equally among his seven children.

The present suit, alleging that the conveyance and assignment were the product of the defendants' duress, undue influence, and deceit and Willie Parent's mental incompetency, was commenced by the plain-

---

1. Mary A. Bowie, one of Parent's children, was joined as a defendant after refusing to participate as a plaintiff. M.R.Civ.P. 19(a).

tiffs-appellants, four of Parent's children,[2] on December 16, 1975 in Superior Court (Androscoggin County). By special verdict, the jury found undue influence and lack of capacity. Treating the jury verdict as merely advisory, the presiding Justice ordered judgment entered for the defendants.

We deny plaintiffs' appeal.

In their pre-trial memoranda, plaintiffs and defendants requested a jury trial pursuant to M.R.Civ.P. 38(b). Following the pre-trial conference, the case was set down for a jury trial. Shortly before trial, the presiding Justice, who had not participated in the pre-trial conference, ruled that the jury would only be advisory. Having saved this ruling for our consideration by a timely objection, plaintiffs assert that their suit entitled them to a binding jury verdict. Defendants respond that plaintiffs' claims sound in equity, to which no jury trial right exists.

■ In articulating their respective positions, the parties appropriately focus on art. I, § 20 of the Maine Constitution.

In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced . . . .

Our constitutional provision safeguards the right to a jury trial on all legal claims. *City of Rockland v. Rockland Water Co.,* 86 Me. 55, 29 A. 935 (1893). As to equitable issues, viz., "cases where it has heretofore been otherwise practiced", no jury trial right exists by virtue of art. I, § 20, although an advisory jury or trial by consent is available, subject to the limitations set forth in M.R.Civ.P. 39(d).

■ To determine the often elusive question of whether a claim is legal or equitable, there must be an appraisal of the basic nature of this issue presented, including the relief sought. *Portland Pipe Line Corp. v. Environmental Improvement Commission,*

Me., 307 A.2d 1, *appeal dismissed,* 414 U.S. 1035, 94 S.Ct. 532, 38 L.Ed.2d 326 (1973); *Farnsworth v. Whiting,* 106 Me. 430, 76 A. 909 (1910).

Plaintiffs' complaint asserted deceit, undue influence, duress, and mental incapacity. A constructive trust or damages were requested for the assignment of the savings account. For the real estate, plaintiffs prayed for damages, constructive trust, or cancellation of the deed. Seizing upon their claim of deceit, plaintiffs assert that this issue, sounding in tort, entitled them to a jury trial under art. I, § 20.

Plaintiffs might indeed have a cogent argument were they seriously pressing their deceit claim. *See Bolduc v. Therrien,* 147 Me. 39, 83 A.2d 126 (1951); *Crossman v. Bacon & Robinson Co.,* 119 Me. 105, 109 A. 487 (1920). Here, however, their pre-trial memorandum omitted deceit as a justiciable issue. No reference was made to deceit in the pre-trial order, nor was the issue tried by the consent of the parties.

■ Were the jury trial issue determined solely on the basis of the pleadings, any party who desired a jury trial would be able to obtain one by simply injecting a legal issue into a complaint or answer. We are not implying that counsel would knowingly violate M.R.Civ.P. 11;[3] rather, many claims which appear viable at the pleading stage are for a variety of reasons no longer extant by the time of the pre-trial conference. Thus, the pre-trial order supersedes the pleadings, *Beck v. Sampson,* 158 Me. 502, 186 A.2d 783 (1962), specifies the legal theories upon which the parties are proceeding, and formulates the issues to be tried. *Atkins v. Atkins,* Me., 376 A.2d 856 (1977). Accordingly, we hold that where the issues raised by the pleadings have been modified by a pre-trial order, the order and not the pleadings controls the jury trial question. *See Craig v. Hamilton,* 213 Kan. 665, 518 P.2d 539 (1974).

---

2. The plaintiffs obtained from another child, Albert P. Parent, an assignment of his interest.

3. In pertinent part, M.R.Civ.P. 11 reads:

The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.

As framed by the pre-trial order, the issues for trial were undue influence, duress, and lack of capacity. Damages were also set forth as a jury issue. Commenting on these issues, the Justice who presided at trial stated:

I considered the issues that were raised in this particular case the same issues as would be raised in a will case. And that I considered it no different from a will case. That, therefore, the jury verdict would be advisory only.

On the contrary, we find the distinction between a will case and the instant suit significant and, as will be elaborated upon below, conclude that such differences entitled plaintiffs to a jury trial on the issues of undue influence, duress, and damages.[4]

■ Undue influence and duress typically arise in Probate Court or the Superior Court, sitting as the Supreme Court of Probate, in the context of a will contest where the validity of a will is in dispute. *In re Will of Fenwick,* Me., 348 A.2d 12 (1975); *Sheets v. Estate of Sheets,* Me., 345 A.2d 493 (1975); *In re Moran's Will,* 139 Me. 178, 28 A.2d 239 (1942). Because probate matters were traditionally vested in the ecclesiastical courts, there was no right to a jury trial in the English common-law courts in a proceeding to probate a will. 3 Bowe-Parker, Page on Wills § 26.85 at 180 (rev.1961). As such, in this country, the right to a jury trial in a will contest is not one of constitu-

tional dimension, but if it is to exist at all, the right must be predicated upon statutory authorization. *In re Estate of Howard,* 58 Cal.App.3d 250, 129 Cal.Rptr. 836 (1976).[5]

■ When undue influence or duress therefore arises in a will contest, it is the nature of the proceeding as probate rather than anything inherent in the claim of undue influence or duress which forecloses the possibility of these issues being labeled "legal," to which a jury right would attach.

■ Here, however, the plaintiffs were not contesting the will. Their concern was with the real estate and savings account which, but for the alleged undue influence and duress resulting in an inter-vivos conveyance, would have passed through the will. Probate Court, which has the power to set aside the will, would not be the appropriate forum to redress plaintiffs' alleged injuries.[6]

Before reaching the question of whether plaintiffs had a right to a jury trial, we must thus confront the issue of whether plaintiffs had any recourse available at all. Specifically, we face the problem of whether any action can be maintained where, as here, the plaintiffs had only an expectation that they would have received a share of the real estate and savings account under the will and do not deny that at any time before his death the testator could have willed the property to someone else.

4. For reasons which will become apparent, our present discussion will not consider the claim of mental incapacity. See note 7 *infra.*

5. No such statutory authority exists in Probate Court. "Courts of probate are of special and limited jurisdiction. Their proceedings are not according to the course of the common law. They have no juries." *Bradstreet v. Bradstreet,* 64 Me. 204, 209 (1874). A restricted jury trial is available in the Supreme Court of Probate. In pertinent part, 4 M.R.S.A. § 406 provides:

If, upon such hearing [an appeal from the Probate Court to the Supreme Court of Probate], any question of fact occurs proper for a trial by jury, an issue may be framed for that purpose under the direction of the court and so tried.

As interpreted, 4 M.R.S.A. § 406 permits an advisory jury whose verdict is not conclusive but which serves to advise the presiding Jus-

tice. *Appeal of Eastman,* 135 Me. 233, 194 A. 586 (1937); *Appeal of Martin,* 133 Me. 422, 179 A. 655 (1935).

6. As stated in 1 Bowe-Parker, *supra,* § 14.8 at 706, in an analogous situation,

[i]f the party injured by the fraud is one who would otherwise have been a legatee and the fraud took the form of inducing the testator to omit a gift to the aggrieved party and to include a gift to the party practicing the fraud, rejecting the fraudulently procured gift at probate would be ineffective to pass the property to the harmed party. *Probate can strike from the will something that is in it as a result of fraud but cannot add to the will a provision that is not there* nor can the probate court bring into being a will which the testator was prevented from making and executing by fraud. (emphasis supplied).

We have long protected the expectancy of a prospective advantage in the business realm. In *Perkins v. Pendleton,* 90 Me. 166, 38 A. 96 (1897), plaintiff was employed by a company which had the right to terminate his employment at will. Defendants, who allegedly unlawfully caused the company to discharge plaintiff, defended by arguing that plaintiff's expectation of continued employment was not a legal right entitled to protection. The Court responded:

> [W]herever a person, by means of fraud or intimidation, procures, either the breach of a contract or the discharge of a plaintiff, from an employment, which but for such wrongful interference would have continued, he is liable in damages for such injuries as naturally result therefrom; and that the rule is the same whether by these wrongful means a contract of employment definite as to time is broken, or an employer is induced, solely by reason of such procurement, to discharge an employee whom he would otherwise have retained. *Id.* at 176–77, 38 A. at 99.

■ In both *Perkins* and the instant case, the injured parties had only an expectation of future gain. In both, the third parties, i. e., the company and the testator, were under no legal obligation to the plaintiffs. Both suits in substance alleged that but for the tortious conduct of the defendants, the plaintiffs would have reaped economic benefits. In short, in all material respects, the instant case falls well within the controlling principles of *Perkins v. Pendleton.* Nor can we perceive any countervailing policy reason not to extend *Perkins v. Pendleton,* which recognized an action for the wrongful interference with the expectation of a future business relationship, into the area of decedents' estates.

To be sure, courts were initially inclined not to permit such an action. *Hall v. Hall,* 91 Conn. 514, 100 A. 441 (1916); *Hutchins v. Hutchins,* 7 Hill 104 (N.Y.1845).

But as Prosser argues,

> [t]here is no essential reason for refusing to protect such noncommercial expectancies, [interference with an expected gift or legacy under a will], at least where there is a strong probability that they would have been realized . . . .. The problem appears in reality to be one of satisfactory proof that the loss has been suffered, instead of the existence of a ground of tort liability. W. Prosser, Law of Torts § 130 at 951 (4th ed. 1971).

*See* 2 Bowe-Parker, *supra,* § 24.5 at 608–09; Evans, *Torts to Expectancies in Decedents' Estates,* 44 U.Pa.L.Rev. 187 (1944); *see generally,* Annot., 11 A.L.R.2d 808 (1950).

Accordingly, with a frequency that approaches a general rule of law, courts have recognized an independent action for the wrongful interference with an intended bequest. Thus, where defendant either tortiously prevented the testator from making a will favorable to the plaintiff, *Allen v. Leybourne,* 190 So.2d 825 (Fla.App.1966) (fraud); *Bohannon v. Wachovia Bank & Trust Co.,* 210 N.C. 679, 188 S.E. 390 (1936) (fraud), or tortiously caused the testator to revoke or alter a will, *Mitchell v. Langley,* 143 Ga. 827, 85 S.E. 1050 (1915) (fraud); *Newsom v. Estate of Haythorn,* 125 Ind. App. 276, 122 N.E.2d 149 (1954) (fraud, duress); *Frohwein v. Haesemeyer,* 264 N.W.2d 792 (Iowa 1978) (deceit, undue influence), or prevented the testator from revoking a will, *Latham v. Father Divine,* 299 N.Y. 22, 85 N.E.2d 168 (1949) (misrepresentation, undue influence, force, murder), or, as in the present case, unlawfully caused the testator to convey inter-vivos that which would have passed under the will, *Hegarty v. Hegarty,* 52 F.Supp. 296 (D.Mass.1943) (Wyzanski, J.) (duress, fraud, undue influence), an action for damages or for a constructive trust will lie. For additional case authority, *see* 11 A.L.R.2d, *supra,* at 808 *et seq.*

■ We join these decisions by holding that under appropriate circumstances Maine recognizes an action for the wrongful interference with an expected legacy or gift under a will.[7]

---

7. Because plaintiffs' claim that the testator lacked the requisite mental capacity to deed or

assign the property cannot be considered a wrong perpetrated by the defendants, no *Per-*

The wrongful interference in the instant case allegedly occurred through the use of undue influence and duress. We have stated that undue influence is a species of constructive fraud. *Appeal of Robie,* 141 Me. 369, 44 A.2d 889 (1945). Duress in these circumstances rests upon similar grounds. Although fraud is a fundamental ground of equitable jurisdiction, regardless of whether the injured party has an adequate remedy at law, *Jensen v. Snow,* 131 Me. 415, 163 A. 784 (1933); 14 M.R.S.A. § 6051(4), it is not exclusively equitable as demonstrated by an action at law for deceit. *Bolduc v. Therrien, supra.* Thus, it is said that "[i]n the abstract, fraud is neither a legal nor an equitable issue." 5 Moore's Federal Practice § 38.20 at 175 (2d ed. 1978). Because fraud cannot be classified as strictly legal or equitable, the remedy sought is a highly significant factor in determining the right to a jury trial. *Hyde Properties v. McCoy,* 507 F.2d 301 (6th Cir. 1974). By seeking damages, not as incidental to equitable relief but in the alternative and as full compensation for the injury allegedly received, plaintiffs were plainly entitled to a jury trial.[8] *Hegarty v. Hegarty, supra; Allen v. Leybourne, supra; Frohwein v. Haesemeyer, supra*; 11 A.L.R.2d, *supra* at 813–21; *see Taylor v. Pratt,* 135 Me. 282, 195 A. 205 (1937) (jury trial in which plaintiff sought damages for *Perkins v. Pendleton* injury).

Having concluded that the presiding Justice erred in not permitting a trial by right, we find the error harmless because the court would have been justified in granting a judgment n. o. v. We recognize, of course, that defendants' failure in the instant case to move for a directed verdict at the close of all the evidence would typically foreclose a motion for a judgment n. o. v. M.R.Civ.P. 50(b); *Patterson v. Rossignol,* Me., 245 A.2d 852 (1968). Here, however, the presiding Justice had previously ruled, albeit erroneously, that the jury verdict would only be advisory. Given this ruling, it would have been an idle gesture indeed for the defendants to have moved under M.R.Civ.P. 50 which has no applicability where the case is tried to the presiding Justice with an advisory jury. Wright & Miller, Federal Practice and Procedure: Civil § 2523 at 540 (1971). Our rules of procedure do not require the parties to undertake such futile acts. *See Munchak Corp. v. Cunningham,* 457 F.2d 721, 725 (4th Cir. 1972).

We have carefully read the entire record, including the transcript of the lengthy four-day trial. Viewing the testimony, including every justifiable inference, in the light most favorable to the plaintiffs, we conclude as a matter of law that such testimony, largely speculative, was utterly insufficient to create an issue of fact for the jury. *See Schultz v. Gould Academy,* Me., 332 A.2d 368 (1975). It would serve little purpose to recite what little evidence the plaintiffs were able to muster in support of their claims. Suffice to say, we are in complete accordance with the presiding Justice when he stated:

> I did not feel that [the verdict] was supported by the law. He later added:

> [W]ere this a binding jury verdict, and not an advisory one, I would have no problem in setting it aside, because I feel that the jury verdict is wholly unsup-

---

kins v. Pendleton cause of action exists on this issue. W. Prosser, *supra* at 951.

In recognizing this tort, we emphasize that it is one for the wrongful interference with an intended bequest and not an independent action for undue influence or duress. Rather, undue influence and duress, traditionally considered wrongful under well-established precedent, *Depositors Trust Co. v. Blanchard,* Me., 377 A.2d 101 (1977); *In re Haley's Estate,* 147 Me. 173, 84 A.2d 808 (1952); *Appeal of Rogers,* 123 Me. 459, 123 A. 634 (1924), are simply the means by which the alleged interference occurred.

8. Contrary to defendants' assertion, nothing in *Farnsworth v. Whiting, supra,* compels a different result. In *Farnsworth,* an administratrix attempted to recover certain personal property of the deceased allegedly taken by the defendants who resisted the action by claiming title due to a gift causa mortis. *Farnsworth v. Whiting* stands for the unassuming proposition that such a suit brought in equity and seeking equitable replevin does not entitle the parties to a jury trial.

ported by the weight of the evidence in this case.

The plaintiffs nowhere demonstrate that a different case would be presented before a designated binding jury than that which was tried before the presiding Justice with an advisory jury. We would be squandering our judicial resources, therefore, to remand the case for a new trial where, as here, only one result could be reached. *See State v. Gwinn*, Me., 390 A.2d 479 (1978).

The entry is:

Appeal denied.

Judgment affirmed.